NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3741-13T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ELEX HYMAN,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 16, 2017**
>
> **APPELLATE DIVISION**

Argued November 9, 2016 — Decided August 16, 2017

Before Judges Ostrer, Leone and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 10-11-2077.

John Douard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Mr. Douard, of counsel and on the brief).

William Kyle Meighan, Assistant Prosecutor, argued the cause for respondent (Joseph D. Coronato, Ocean County Prosecutor, attorney; Samuel Marzarella, Supervising Assistant Prosecutor, of counsel; Mr. Meighan, on the briefs).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

OSTRER, J.A.D.

A jury found defendant Elex Hyman guilty of possessing cocaine with intent to distribute and conspiring to do so, both second-degree offenses.  N.J.S.A. 2C:5-2, N.J.S.A. 2C:35-5(a)(1), -5(b)(2).  On appeal, defendant principally argues the court erred in admitting as lay opinion testimony under N.J.R.E. 701 the lead investigative detective's interpretation of drug-related slang and code words that defendant and others used in recorded wiretapped conversations.

We agree the detective's testimony interpreting the slang and code words was in the nature of expert opinion.  However, the court's error was harmless in view of the detective's qualifications to testify as an expert, and the overwhelming evidence of defendant's guilt.  We therefore affirm the conviction.

I.

As part of an ongoing investigation of cocaine distribution, the Ocean County Prosecutor's Office obtained wiretap orders in January 2010, authorizing the State to intercept conversations from telephone numbers used by co-defendants Daniel Rogers and Travell Nickey.  Thereafter, the State overheard conversations on February 5 and 7, 2010, in which defendant agreed to purchase 200 grams of cocaine from Rogers, with Nickey serving at times as an intermediary.  The State also intercepted conversations indicating that Rogers intended to drive to defendant's home to deliver a

2

100-gram package of cocaine. Officers later observed Rogers arrive and briefly meet with defendant outside his home.

Based on the intercepted communications and the surveillance, officers obtained a warrant to search defendant's home. In the search that followed on February 20, 2010, police seized 50.5 grams of cocaine from a laundry room shelf; the wiretapped cell phone; a money counter; a digital scale; and over $3000 in cash. In a Mirandized statement,[1] defendant admitted that the seized cocaine was his.

Defendant was tried separately from eight other defendants, including Nickey and Rogers, who allegedly participated in the conspiracy to manufacture, distribute or possess with the intent to distribute cocaine. After a N.J.R.E. 104 hearing, and over a defense objection, the court permitted the State to elicit, as lay opinion, the lead investigating detective's interpretation of drug-related jargon.

In the N.J.R.E. 104 hearing, Detective David Fox testified he had been involved in hundreds of drug-related investigations, including close to twenty wiretap investigations, and he had become familiar with certain drug-related jargon. He testified that some terms were "universal" to the drug culture, and others unique to

---

[1] See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

a particular drug network. However, in this case, all the terms used had come up in past investigations.

The court expressed concern that Fox's testimony came close to addressing the "ultimate issue" and suggested the State limit his testimony solely to his understanding of what the different slang phrases meant:

> I will allow Detective Fox to be questioned as originally I thought, that being that he's going to be ask[ed] to interpret certain phrases in the transcripts and that are played for the jury. And that's his purpose and I've heard enough to be able to indicate, in my opinion, that he qualifies to give testimony as a lay opinion in that the detective is using his own senses to acquire knowledge of the street slang or street language related to drug and illegal activities, and that he can give the jury some guidance because it is outside of their knowledge and outside of the Court's knowledge as to what those terms refer to.
>
> And I am going to, however, limit and I will sustain any objection if we get into any areas where he's giving an opinion concerning what the mental state of the individual or any of the individuals on the recordings or in the transcripts are, because I don't think that that's, he's not being qualified as an expert and I don't think he should be allowed to do that.

Consistent with the court's direction, the prosecutor did not ask Fox to offer an opinion expressly attributing a state of mind or intent to the overheard speaker. However, after playing each recording for the jury, which followed along with a transcript,

4

the prosecutor asked Fox to provide, based on his "training and experience and knowledge of this investigation," his "interpretation of" a word or a phrase "as . . . used in" or "in the context of" the recorded conversation.

Fox opined: "that shit is good" referred to the quality of cocaine; a "buck," used repeatedly, meant "100 grams of cocaine"; "two one's" and "two 100s" referred to "two separate individual packages of 100 grams of cocaine"; "make it one and a half" meant "150 grams of cocaine, one individual pack for 100 grams of cocaine, one for 50 grams of cocaine"; "up top" referred to the New York area; "he still want?" meant whether a person was "[s]till looking to purchase a quantity of cocaine"; "you good?" inquired "if somebody still has a current supply of cocaine"; and "hit you up" (which is transcribed as "hitchu up") meant calling another when ready to purchase cocaine.

Assuming the accuracy of those interpretations, the conversations supported the State's contention that defendant agreed to purchase 100 grams of cocaine on two occasions. On cross-examination, Fox rejected suggestions that many of the words used had their common meaning outside the criminal milieu, and that defendant was discussing a potential loan of $100 or $200 dollars.

5

Defendant testified briefly in his own defense solely to challenge whether a particular phone number belonged to Nickey. However, on cross-examination, defendant admitted that State witnesses had accurately identified him, Nickey, and Rogers on the recordings. He also answered affirmatively when asked whether, on February 5, 2010, he "had agreed to purchase 100 grams of cocaine from Mr. Rogers with Mr. Nickey's assistance and he met you at your house . . . for that purpose . . . ." He conceded that he did so again two days later.

The jury found defendant guilty of the conspiracy and the substantive offense noted above. The court granted the State's motion for an extended term, based on a prior possession-with-intent-to-distribute conviction, and imposed a fourteen-year term on the substantive charge, with a six-year period of parole ineligibility. The court imposed a five-year concurrent term on the conspiracy charge.

Defendant raises the following points on appeal:

> POINT I
>
> THE JUDGE FAILED TO QUALIFY FOX AS AN EXPERT WITNESS DESPITE TESTIMONY THAT WAS BEYOND THE KEN OF THE AVERAGE JUROR, AND PERMITTED FOX TO TESTIFY IMPROPERLY AS A LAY WITNESS. MOREOVER, THE JUDGE ERRED IN DEVISING A HYBRID JURY INSTRUCTION THAT INCORPORATED PART OF THE EXPERT WITNESS JURY CHARGE, BUT NONETHELESS REFERRED TO FOX AS A LAY WITNESS, THEREBY CONVEYING THAT LA[Y] OPINION HAD THE AUTHORITY OF EXPERT OPINION. (U.S. CONST. AMENDS. VI,

6

XIV; N.J. CONST. ART. 1, PARS. 1, 9, 10).
(Partially raised below).

A.   The Judge Failed To Qualify Fox As An
     Expert Witness Despite Testimony That Was
     Beyond The Ken Of The Average Juror, And
     Fox Provided Testimony That Exceeded The
     Scope Of Permissible Lay Opinion.

B.   The Judge Concocted A Hybrid Jury
     Instruction To Cover Only Fox's
     Testimony, But Still Characterized Him As
     A Lay Witness, Despite Incorporating A
     Few Sentences From the Expert Witness
     Model Charge.

POINT II

THE SENTENCING IMPOSED WAS MANIFESTLY
EXCESSIVE AND THE JUDGE FAILED TO MERGE THE
CONSPIRACY TO POSSESS WITH INTENT TO
DISTRIBUTE CONVICTION INTO THE UNDERLYING
POSSESSION WITH INTENT TO DISTRIBUTE
CONVICTION.

Defendant presents the following additional point in a pro

se supplemental brief:

DEFENDANT IS ENTITLED TO A REVERSAL OF HIS
CONVICTION AND A NEW TRIAL BASED ON THE FACT
THAT DEFENSE COUNSEL WAS INELIGIBLE TO
PRACTICE LAW IN THE STATE OF NEW JERSEY AT THE
TIME OF HIS REPRESENTATION IN THIS MATTER, IN
VIOLATION OF THE DEFENDANT'S RIGHT TO COUNSEL
GUARANTEED BY THE U.S. CONSTITUTION, AMEND.
VI, AND NEW JERSEY CONSTITUTION, ART. I, ¶ 10.

II.

We apply a deferential standard of review to the trial court's

evidentiary rulings.  "The necessity for, or propriety of, the

7

admission of expert testimony, and the competence of such testimony, are judgments within the discretion of the trial court." State v. Zola, 112 N.J. 384, 414 (1988), cert. denied, 489 U.S. 1022, 109 S. Ct. 1146, 103 L. Ed. 2d 205 (1989); see also Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (stating, "the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion").[2] However, when the trial court applies the wrong legal test when analyzing admissibility, we review the issue de novo. Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012).

A.

We first discuss fundamental principles governing lay and expert opinion testimony, noting that the proponent of opinion evidence bears the burden to establish its admissibility. State v. Torres, 183 N.J. 554, 567 (2005).

---

[2] If the issue pertains to "the admissibility of expert scientific evidence," then "the appellate court need not be as deferential to the trial court's ruling . . . as it should be with the admissibility of other forms of evidence." State v. Torres, 183 N.J. 554, 567 (2005) (holding expert testimony on gang practices was admissible); see also State v. Harvey, 151 N.J. 117, 167 (1997) ("Like trial courts, appellate courts can digest expert testimony as well as review scientific literature, judicial decisions, and other authorities. To the extent that general acceptance focuses on issues other than a witness's credibility or qualifications, deference to the trial court is less appropriate.").

Lay opinion testimony is governed by N.J.R.E. 701, which states:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue.

The witness's perception must "rest[] on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." State v. McLean, 205 N.J. 438, 457 (2011) (citations omitted); see also N.J.R.E. 602 ("Except as otherwise provided by Rule 703 (bases of opinion testimony by experts), a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Examples include opinions about a vehicle's speed, based on seeing or hearing it go by; and a person's intoxication, based on seeing, hearing, and smelling the person. Ibid. (citations omitted). As the McLean Court explained, police officers may also offer lay opinions on such subjects as a person's narcotics intoxication, ibid. (citing State v. Bealor, 187 N.J. 574, 588-89 (2006)); the point of impact between vehicles involved in a collision, id. at 459 (citing State v. LaBrutto, 114 N.J. 187, 197-99 (1989)); and "whether a neighborhood [was] a 'high crime

9

area,'" ibid. (citing Trentacost v. Brussel, 164 N.J. Super. 9, 19-20 (App. Div. 1978), aff'd, 82 N.J. 214 (1980)).

Although courts have "referred as well to the officer's training and experience," to justify admitting the officer's testimony as lay opinion, "the analysis of admissibility has been, as it must be, firmly rooted in the personal observations and perceptions of the lay witness in the traditional meaning of . . . Rule 701." Ibid. "[U]nlike expert opinions, lay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." Id. at 460.

Furthermore, lay opinion must assist the jury either in understanding the witness, or determining a fact in issue. N.J.R.E. 701. In that respect, it is no different from expert opinion. "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." McLean, supra, 205 N.J. at 462. In other words, "[t]he Rule does not permit a witness to offer a lay opinion on a matter 'not within [the witness's] direct ken . . . and as to which the jury is as competent as he to form a conclusion[.]'" Id. at 459 (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)).

The Court gave an example of a helpful lay opinion that is of particular note here. The Court stated:

10

Thus, for example, a lay witness was permitted to offer an opinion about the meaning of street slang that defendant used during a conversation relating to a crime because it was "unfamiliar to the average juror, . . . [it] was of assistance in determining the meaning and context of his conversation with defendant and was obviously relevant to the issue of defendant's motive and intention."

[Id. at 458 (quoting State v. Johnson, 309 N.J. Super. 237, 263 (App. Div.), certif. denied, 156 N.J. 387 (1998)).]

In McLean, the Court concluded that an officer was not authorized to offer his lay opinion that the defendant had engaged in a drug-related transaction, based on observed interactions between defendant and another person. Id. at 463. The Court explained that the officer "presumed to give an opinion on matters that were not beyond the understanding of the jury." Ibid. Furthermore, "it was an expression of a belief in defendant's guilt . . . ." Ibid.

By contrast, expert testimony depends on a witness's "specialized knowledge" to address matters outside a juror's understanding. N.J.R.E. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The rule embodies three requirements: "(1) the

11

intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony."  State v. Kelly, 97 N.J. 178, 208 (1984); see also Torres, supra, 183 N.J. at 567-68.

The McLean Court held that "a question that referred to the officer's training, education and experience, in actuality called for an impermissible expert opinion."  205 N.J. at 463.  Likewise, we held in State v. Kittrell, 279 N.J. Super. 225, 236 (App. Div. 1995), that an officer's testimony about the use of beepers in drug transactions should have been admitted as expert, not lay opinion, because it was based on his extensive experience in drug related arrests, and not his personal observations of the defendant using the beeper.

In addition, an expert's testimony must be "so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman."  Boland v. Dolan, 140 N.J. 174, 188 (1995) (internal quotation marks and citation omitted).  Expert testimony is common in drug cases, because it "provides necessary insight into matters that are not commonly understood by the average juror, such as the significance of drug packaging and weight, scales and cutting agents, stash sites, the

12

role of confederates, and other activities consistent with drug trafficking." State v. Cain, 224 N.J. 410, 413 (2016). An expert may also testify about "identifiable logos on drug packaging . . . ." Id. at 426. However, the proponent must establish "the field of inquiry . . . [is] generally accepted such that an expert's testimony would be sufficiently reliable." Torres, supra, 183 N.J. at 568 (relying on "persuasive judicial decisions" to establish reliability of expert on gang practices and organization).

Our evidence rules provide that "otherwise admissible" expert testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.J.R.E. 704. However, the McLean Court held that in the context of a criminal trial, "experts may not, in the guise of offering opinions, usurp the jury's function by . . . opining about [a] defendant's guilt or innocence . . . ." 205 N.J. at 453; see also id. at 461 (stating "expert opinions may not be used to express a view on the ultimate question of guilt or innocence" (citing State v. Reeds, 197 N.J. 280, 300 (2009))); State v. Odom, 116 N.J. 65, 82 (1989).

Recently, in Cain, supra, 224 N.J. at 429, the Court jettisoned a procedure endorsed in Odom, supra, 116 N.J. at 80-81, that had permitted an expert to testify as to a defendant's state of mind, an ultimate issue in an intent-to-distribute case,

13

without pronouncing the defendant's guilt. The Court cautioned that hypothetical questions should only be used when necessary and that "no one is fooled when a hypothetical tracks the evidence" and removes the defendant's name. Ibid.; see also State v. Simms, 224 N.J. 393, 408 (2016) ("The practice of assuming in a hypothetical question an unnamed 'individual' when every detail of the question makes clear the reference is to the defendant serves no purpose and will not dissipate the prejudice of inappropriate opinion testimony.").

The Cain Court reviewed federal and other states' decisions rejecting expert testimony about a defendant's "state of mind" in a narcotics prosecution that goes to an element of the offense. Id. at 428. The Court specifically referenced Fed. R. Evid. 704(b) — to which New Jersey has no analogue — which expressly states, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." See ibid.

Finding that the probative value of such expert testimony on state of mind is outweighed by potential jury confusion and prejudice to a defendant, id. at 427-28, the Court held, "[g]oing forward, in drug cases, an expert witness may not opine on the

14

defendant's state of mind." Id. at 429. In particular, "[w]hether a defendant possessed a controlled dangerous substance with the intent to distribute is an ultimate issue of fact to be decided by the jury." Ibid.

Although the Cain Court did not expressly limit its "going forward" rule to expert opinions on "the defendant's state of mind" that may "constitute[] an element of the crime," nevertheless the Court prohibited testimony about whether a defendant had the requisite intent to distribute, an essential element of the drug offense. Ibid. Given the nature of the out-of-state authority the Court found persuasive, and given the Court's focus on preventing usurpation of the jury's role in deciding the ultimate issue of intent to distribute, we understand Cain to prohibit an expert from offering an opinion on a drug defendant's state of mind when it is an element of the offense.

We subsequently held that the "going forward" rule governed cases, like this one, still on appeal when Cain was decided. State v. Green, 447 N.J. Super. 317, 327 (App. Div. 2016).

B.

We now apply these principles to the admissibility of opinion testimony on drug culture slang or code words. We are aware of no holding by our courts on the need for such opinion testimony. Some such words may have entered the popular lexicon as a result

15

of music, film, and other aspects of modern culture, obviating the need for opinion testimony. As such, a drug dealer's "facially coherent conversation" may need no interpretation. See United States v. Garcia, 291 F.3d 127, 142-43 (2d Cir. 2002) (discussing factors to determine whether lay opinion was needed to interpret drug dealers' conversation), cert. denied, 546 U.S. 878, 126 S. Ct. 173, 163 L. Ed. 2d 176 (2005).

Yet, other drug slang or code words remain beyond the average juror's understanding, particularly those unique to a particular drug network. Thus, lay or expert opinion testimony about that jargon may be warranted. See State v. Nesbitt, 185 N.J. 504, 521 (2006) (Albin, J., dissenting) (stating that "[a]n average juror will not know the meaning of code language used by drug distributors," and an expert's testimony may serve to enlighten the jury on such "arcane subjects"); cf. Torres, supra, 183 N.J. at 573 (noting that jurors would need assistance in understanding "the significance of particular gang symbols"); Johnson, supra, 309 N.J. Super. at 263 (permitting a lay opinion that the expression "get paid" referred to payment in sex as well as money).[3]

---

[3] Federal courts, which have expressly addressed the issue, agree that opinion testimony about drug code words, jargon, and slang can often be helpful. See, e.g., Garcia, supra, 291 F.3d at 139 ("Given the attempts of drug dealers to disguise the content of their discussions as legitimate subject matters, courts may allow

16

In the exercise of its gatekeeping function, a trial court must determine that the opinion testimony will likely assist the jury in understanding drug culture vernacular. See Nesbitt, supra, 185 N.J. at 514 ("Trial courts are expected to perform a gatekeeper role in determining whether there exists a reasonable need for an expert's testimony, and what the parameters of that testimony may be."). Furthermore, once the court permits such testimony, it must guard against opinions that stray from interpreting drug code words, and pertain to the meaning of conversations in general and the interpretation of "ambiguous statements that were patently not drug code." State v. Dukagjini, 326 F.3d 45, 55 (2d Cir. 2003), cert. denied, 541 U.S. 1092, 124 S. Ct. 2832, 159 L. Ed. 2d 259 (2004); see also United States v. Wilson, 484 F.3d 267, 278 (4th Cir. 2007) (noting that portions of an expert opinion went beyond

_____

witnesses to 'decipher' the codes drug dealers use and testify to the true meaning of the conversations."); United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996) ("There is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis."); United States v. Theodoropoulos, 866 F.2d 587, 592 (3d Cir. 1989) (finding expert testimony helpful for the jury to understand recorded conversations involving "different codes, two languages, and truncated sentences"); United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987) ("Lay jurors cannot be expected to be familiar with the lexicon of the cocaine community."); Ralph V. Seep, Annotation, Admissibility of Expert Evidence Concerning Meaning of Narcotics Code Language in Federal Prosecution for Narcotics Dealing — Modern Cases, 104 A.L.R. Fed. 230 (2017).

17

translating arcane code words, and opined on "language that needed no interpretation").

Defendant does not question the need for opinion testimony to interpret alleged slang or code words, nor does he question that Fox had the experience to qualify as an expert witness. Also, he does not address whether, consistent with Kelly and Torres, Fox applied a reliable methodology, based on his training and experience, to interpret the terms defendant used in the overheard conversations.[4]

The problem, defendant argues, is that Fox was not designated and offered as an expert. Instead, he gave a purported lay opinion. Defendant contends Fox's opinions impermissibly

---

[4] The Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702 explain that:

> when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.

At least one federal court questioned the reliability of the methods used by a drug slang expert. See United States v. Hermanek, 289 F.3d 1076, 1093-97 (9th Cir. 2002), cert. denied, 537 U.S. 1223, 123 S. Ct. 1336, 154 L. Ed. 2d 1081 (2003).

18

"imput[ed] his interpretation of the slang" to the speakers and opined about defendant's guilt. Defendant argues Fox's testimony violated the limitations in <u>McLean</u> and, recently, <u>Cain</u> and <u>Simms</u>.[5] He also asserts Fox could not have testified as an expert, because he also testified as the lead investigator. Finally, he argues the jury instructions were erroneous. We address these points in turn.

1.

We agree that Fox testified as an expert, not a lay witness. He was asked repeatedly to render opinions based on "his training and experience and knowledge of this investigation." The basis of his opinion, like that of the officer in <u>McLean</u>, was his training, education and experience — not his "own senses," perceptions and observations. <u>See</u> <u>McLean</u>, <u>supra</u>, 205 <u>N.J.</u> at 456, 459; <u>see also</u> <u>Kittrell</u>, <u>supra</u>, 279 <u>N.J. Super.</u> at 236.

Neither at the <u>N.J.R.E.</u> 104 hearing, nor at trial, did Fox connect his "knowledge of [the] investigation" and his interpretation of the slang and code words. There is no evidence that Fox was undercover, or had conversed with defendant or other conspirators when the arcane terms were used. Fox's "knowledge of [the] investigation" certainly included his familiarity with

---

[5] Defendant invoked <u>Cain</u> and <u>Simms</u> in a letter submitted to us pursuant to <u>Rule</u> 2:6-11(d). We also considered the State's response.

the wiretapped conversations.  Yet, Fox's statement did not become a lay opinion because he heard the wiretaps with his own ears, any more than a non-treating physician's diagnosis becomes a lay opinion because the physician's own hands were used to conduct an independent medical examination.

Nor can a lay opinion rest on Fox's personal knowledge that defendant met with Rogers, police seized drugs at defendant's home, and defendant acknowledged ownership.  A witness may not offer a lay opinion that a person must have been talking about drugs simply because he is personally aware of evidence the person was dealing drugs.  See United States v. Hermanek, 289 F.3d 1076, 1096 (9th Cir. 2002) (criticizing proponent's reasoning as "circular, [and] subjective," where the agent "appear[ed] at times to have interpreted cryptic language as referring to cocaine simply because he believed [the defendants] to be cocaine traffickers"), cert. denied, 537 U.S. 1223, 123 S. Ct. 1336, 154 L. Ed. 2d 1081 (2003).  Such an opinion does not implicate the witness's perceptions of language.  Rather, the witness infers meaning based on other facts in evidence — a task as to which the jury may need no assistance.  Cf. McLean, supra, 205 N.J. at 460 (stating that it is improper to admit "testimony [that] sets forth facts that are not so outside the ken of jurors that they need an expert to spell out for them" their significance).

20

The State also misplaces reliance on the McLean Court's reference to Johnson, supra, in which it endorsed the helpfulness of a lay opinion about street slang. McLean, supra, 205 N.J. at 458 (citing Johnson, supra, 309 N.J. Super. at 263). In Johnson, supra, the defendant kidnapped, sexually assaulted, and murdered a young mother. 309 N.J. Super. at 243. The lay witness testified that before the defendant committed the crimes, he invited the witness to join him in stealing a car to get money for drugs, which the witness declined. Id. at 244. The defendant reportedly responded, "[Y]ou . . . think I'm playing. I'm going to get paid." Ibid. Having heard the phrase used on the streets and in prison, the witness testified that he understood the phrase "get paid" to mean the defendant was going to get money or sex. Id. at 263. Although the witness never heard the defendant himself use the phrase, the court confined the witness's testimony to his understanding, as opposed to the defendant's. Id. at 262-63. Furthermore, another witness testified that the defendant explained to him that "get paid" meant get money by robbery. Id. at 264.

Johnson is distinguishable. First, the Supreme Court cited Johnson to illustrate the requirement that lay opinions be helpful; and not the requirement that lay opinion be "firmly rooted in . . . personal observations and perceptions . . . ." McLean,

21

supra, 205 N.J. at 458-59.  Second, unlike the detective in this case, the first witness in Johnson participated in a conversation with the defendant in which the questioned phrase was used.  309 N.J. Super. at 244.  Also, the witness's testimony pertained to his understanding of the phrase.  Id. at 263.  By contrast, in this case, Fox testified as to the meaning of drug code words as defendant and the other conspirators used them.  Furthermore, in Johnson, the meaning of the questioned phrase was clarified by the second witness.  Id. at 263-64.  "Therefore, the danger of any improper inference from [the first witness's] testimony was rendered nugatory."  Id. at 264.

The Second Circuit Court of Appeals has instructively distinguished between lay and expert opinion on drug code words. If the government asked a drug dealer, testifying on its behalf, to "offer[] his opinion on the allegedly coded conversation and [the defendant's] knowledge based on his 'past experience in drug dealing,' [then] his opinion was not based on his perception of the situation as a participant in it."  Garcia, supra, 291 F.3d at 139 n.9.  Under those circumstances, the government would need to qualify the witness as an expert and make the appropriate pre-trial disclosures, "[i]n order to offer opinion testimony based on [the witness's] knowledge as a drug dealer . . . ."  Ibid.  On the other hand, if the government offered the witness's opinion

22

"on the basis of his status as a participant," id. at 139, then the witness's testimony would qualify as lay opinion and would be admissible, if the proponent presented "a proper foundation explaining the basis for [the witness's] opinion of [the defendant's] knowledge" of the alleged code words. Id. at 141.[6]

The court applied the same principles to a witness who infiltrated a criminal network and testified based on his perceptions made while undercover:

> An undercover agent whose infiltration of a criminal scheme has afforded him particular perceptions of its methods of operation may offer helpful lay opinion testimony under Rule 701 even as to co-conspirators' action that he did not witness directly. By contrast, an investigative agent who offers an opinion about the conduct or statements of conspirators based on his general knowledge of similar conduct learned through other investigations, review of intelligence reports, or other special training, does not meet the requirements of Rule 701 and must qualify as an expert pursuant to Rule 702.
>
> [United States v. Yannotti, 541 F.3d 112, 126 n.8 (2d Cir. 2008), cert. denied, 556 U.S. 1130, 129 S. Ct. 1648, 173 L. Ed. 2d 999 (2009).]

See also United States v. Johnson, 617 F.3d 286, 292-93 (4th Cir. 2010) (holding inadmissible as lay opinion an agent's

---

[6] The court added, "When a conversation has a legitimate purpose understandable to a lay person, testimony about a code without some evidence of prearrangement or some other foundation is inappropriate." Ibid.

23

interpretation of wiretapped phone calls, where he relied not on his personal knowledge and perception, but on his experience as a DEA agent, his post-wiretap interviews, and co-defendants' statements); United States v. De Peri, 778 F.2d 963, 977 (3d Cir. 1985) (permitting a participant in conversations with the defendant to offer lay opinion as to meaning of coded statements because it was based on his "direct perception of the event"), cert. denied, 475 U.S. 1110, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986).[7]

In sum, we are convinced that Fox's testimony was in the nature of expert opinion. Consequently, the State should have expressly sought to qualify him as such.[8] However, as we discuss below, we conclude this error was harmless.

2.

---

[7] Unlike N.J.R.E. 701, the federal rule on lay opinion has, since 2000, expressly provided that a lay opinion is one "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). However, that does not reduce the persuasive force of these federal decisions. The Garcia court did not consider the 2000 amendment to "substantively change Rule 701"; rather, it was to prevent use of lay opinion to evade expert opinion requirements. Garcia, supra, 291 F.3d at 139 n.8. We also recognize that the federal circuits have not all approached these issues the same way. See United States v. Freeman, 730 F.3d 590, 596 (6th Cir. 2013) (noting circuit split).

[8] The State would also have been obliged to provide pre-trial disclosures, designating Fox as an expert. See R. 3:13-3(b)(1)(I). Defendant does not address this omission.

24

Defendant also contends that the scope of Fox's opinion, if it had been admitted as an expert opinion, impermissibly invaded the province of the jury by opining as to defendant's guilt. As to that contention, we disagree.

Fox did not expressly opine that defendant conspired to possess cocaine with the intent to distribute. Nor did Fox attribute to defendant, or the persons with whom he conversed, any state of mind that was an element of the charged offenses. Rather, consistent with the trial court's limitations, Fox confined his opinion to the meaning of the spoken terms. Although he opined as to that meaning as used in the conversations, we reject defendant's argument that Fox's opinions were impermissible.

We recognize that there is at least a conceptual difference between an expert (or lay witness) defining jargon and code words outside of any context, and defining those terms as used in a particular conversation, especially as used by a defendant. In the former case, the opinion witness does not opine on the speaker's intended usage. In the latter case, the opinion witness offers a view as to the speaker's intended meaning of the term, which relates to a speaker's state of mind. But, unless the opinion witness assigns a state of mind that satisfies an element of an offense, we do not understand it to be barred.

25

Federal courts have also rejected the argument that an expert's opinion regarding the meaning of code words used by a defendant or his associates constituted an opinion in violation of Fed. R. Evid. 704(b).  In United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998), cert. denied, 526 U.S. 1060, 119 S. Ct. 1376, 143 L. Ed. 2d 535 (1999), the Ninth Circuit stated:

> [The defendant] has pointed to nothing in [the detective's] testimony that comprises an explicit opinion that [the defendant] intended or knew anything in conjunction with the crimes charged.  Likewise, nothing in the testimony necessarily compels such an inference or conclusion.  [The detective] offered his opinion about the meaning of drug jargon in encrypted exchanges between the conspirators, allowing the jurors to determine for themselves the legal significance of the conversations as interpreted.

The court specifically rejected the defendant's argument that the expert was required to interpret the terminology in a virtual vacuum, and avoid answering questions "'as to specific alleged code words used by [the] defendants.'"  Ibid. (citation omitted).[9]

The Second Circuit has distinguished between drug terminology experts who have "made sweeping conclusions about [the defendants'] activities," and experts who offer testimony confined

---

[9] We do not foreclose a trial court from imposing such a limitation on different grounds, such as to avoid undue prejudice where the expert also testifies as a fact witness.  See Torres, supra, 183 N.J. at 580 (stating that under N.J.R.E. 403, a trial court has discretion "where appropriate, to limit the scope" of opinion testimony offered by an expert who is an investigating officer).

to the meaning of the code words used.  See United States v. Simmons, 923 F.2d 934, 946-47 n.5 (2d Cir.), cert. denied, 500 U.S. 919, 111 S. Ct. 2018, 114 L. Ed. 2d 104 (1991).  The court rejected the argument that an expert violated Fed. R. Evid. 704(b) by interpreting "he will wear green" to mean "[the defendant] would have money with him," and "he knows how to go" to refer to the timing of a payment for heroin.  Id. at 947.  Instead, the court held that the witness's testimony "related only to the meaning of unfamiliar narcotics jargon, [and] left to the jury the task of determining whether the decoded terms demonstrated the necessary criminal intent."  Ibid.; see also Dukagjini, supra, 326 F.3d at 52-53 (finding no violation of Fed. R. Evid. 704(b) by the district court allowing an expert to interpret words used to specify certain drugs).

Persuaded by this federal authority, we reject defendant's argument that Fox impermissibly testified about defendant's state of mind, and invaded the province of the jury to determine guilt.

3.

We also reject defendant's categorical argument that Fox would have been disqualified as an expert witness because he also testified as the lead investigator in the case.

27

As we have already noted in footnote 9, _supra_, the Supreme Court has recognized the risk of undue prejudice when a principal fact witness also testifies as an expert.

> [W]hen the expert witness is an investigating officer, the expert opinion may present significant danger of undue prejudice because the qualification of the officer as an expert may lend credibility to the officer's fact testimony regarding the investigation. That is a delicate situation that requires the trial court to carefully weigh the testimony and determine whether it may be unduly prejudicial.
>
> [_Torres_, _supra_, 183 _N.J._ at 580.]

_See also_ _McLean_, _supra_, 205 _N.J._ at 454. However, the Court has not imposed an absolute ban on such dual roles. _Torres_, _supra_, 183 _N.J._ at 580; _see also_ _Dukagjini_, _supra_, 326 _F._3d at 56 (despite the risk that case agents testifying as experts may "easily elide" between the two aspects of their testimony, the court declined to "prohibit categorically" such dual roles).

Short of barring a lead investigator from testifying as an expert, the trial court has discretion "where appropriate, to limit the scope of such testimony." _Torres_, _supra_, 183 _N.J._ at 580. Also, "[i]n all cases where expert testimony is allowed, the trial court . . . should give a limiting instruction to the jury 'that conveys to the jury its absolute prerogative to reject both the expert's opinion and the version of the facts consistent with that opinion . . . .'" _Ibid._ (citation omitted). In sum, Fox's

28

testimony regarding his role as lead investigator would not have necessarily precluded him from testifying as an expert.

4.

Predicated on his contention that Fox should have testified as an expert, defendant also argues that the judge should have delivered the model charge on expert testimony. As defendant did not raise this issue before the trial court, we apply a plain error standard of review. See State v. Townsend, 186 N.J. 473, 498 (2006). "Plain error in the context of a jury charge . . . [must be] sufficiently grievous . . . to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Torres, supra, 183 N.J. at 564 (internal quotation marks and citation omitted).

We agree that the model charge on expert testimony was warranted, inasmuch as Fox should have testified as an expert. However, any prejudice to defendant was limited by the court's delivery of a hybrid instruction that, significantly, borrowed elements of the model charge on expert testimony.

The judge introduced the subject of Fox's testimony by noting:

> In addition, a witness came before you and offered his opinion as to the meaning of words and terms used in the recorded conversations. In this case, Detective David Fox testified as to his opinion of certain terms and phrases used in the intercepted communications that were played for you as jurors.

29

In so doing, the judge omitted the opening paragraph of the model charge, which describes the rationale for permitting expert opinion:

> As a general rule, witnesses can testify only as to facts known by them. This rule ordinarily does not permit the opinion of a witness to be received as evidence. However, an exception to this rule exists in the case of an expert witness who may give (his/her) opinion as to any matter in which (he/she) is versed which is material to the case. In legal terminology, an expert witness is a witness who has some special knowledge, skill, experience or training that is not possessed by the ordinary juror and who thus may be able to provide assistance to the jury in understanding the evidence presented and determine the facts in this case.
>
> [Model Jury Charge (Criminal), "Expert Testimony" (2003).]

However, the court did provide this paragraph in instructing the jury how to assess the testimony of two other experts: a forensic chemist, and an expert in the field of possession with intent to distribute.

The judge then gave a hybrid instruction regarding Fox's testimony, which largely mirrored the model jury charge for experts. The most significant differences in the charge included

the court's replacement of the words "expert" and "expert opinion"

with "witness" and "lay opinion."[10]

---

[10] We set forth the court's instruction, in which we highlight language drawn from the <u>Model Jury Charge (Criminal)</u>, "Expert Testimony" (2003), bracket language omitted from the model charge, and capitalize language the court added:

> DETECTIVE FOX'S OPINIONS WERE BASED ON HIS UNDERSTANDING OF THE TERMS THROUGH HIS PERCEPTIONS AND EXPERIENCE IN THE CONTEXT OF THIS CASE. <u>You are not bound by such</u> [expert's] <u>opinion, but you should consider each opinion and give it the weight to which you deem it is entitled, whether that be great or slight</u>[,] <u>or you may reject it. In examining each opinion, you may consider the reason</u>[s] <u>given for it, if any, you may also consider the</u> [qualifications and] <u>credibility of the</u> [expert] WITNESS OFFERING THE OPINION.
>
> <u>It is always within</u> YOUR FUNCTION, YOUR [the] <u>special function</u> [of the jury] AS JURORS <u>to determine whether the facts on which the answer or testimony of</u> [an expert] THE WITNESS <u>is based actually exist</u>S. <u>The value or weight of the opinion</u> [of the expert] OFFERED BY THE WITNESS <u>is dependent upon, and is no stronger than, the facts on which it is based. In other words,</u> AGAIN <u>the probative value of the</u> LAY <u>opinion</u> [will] WOULD <u>depend upon whether from all of the evidence in the case</u>[,] <u>you find that those facts are true. You may</u>[,] <u>in fact</u>[,] <u>determine from the evidence in the case that the facts that form the basis of the opinion are true,</u> [are] <u>not true, or</u> [are] <u>true in part only, and</u>[,] <u>in light of such findings, you should decide what</u> [a]<u>ffect such determination has upon the weight to be given to the opinion of the</u> [expert] WITNESS. <u>Your acceptance or rejection of the</u> [expert] WITNESS' <u>opinion will depend, therefore, to some extent on your findings as to the truth of the facts relied upon.</u> AGAIN, <u>the ultimate</u>

31

A trial court's role is to "instruct juries on the proper weight to be given to an expert opinion and to emphasize that the ultimate decision about a defendant's guilt rests solely with the jury." Nesbitt, supra, 185 N.J. at 513. "Appropriate and proper charges to a jury are essential to a fair trial." State v. Green, 86 N.J. 281, 287 (1981). However, when assessing the propriety of a trial court's jury instruction, we must consider "whether the charge in its entirety was ambiguous or misleading." State v. R.B., 183 N.J. 308, 324 (2005) (internal quotation marks and citation omitted).

Defendant highlights the court's failure to instruct the jurors to consider Fox's qualifications, in assessing his expert opinion. Although the omission was error, the State elicited Fox's extensive background in drug investigations and wiretaps. The general charge on credibility invited the jury to consider Fox's background, by instructing the jury to consider a witness's "means of obtaining knowledge of the facts," "power of discernment," and "ability to . . . observe." The court also directed the jury to consider the basis of Fox's opinion.

determination of whether or not the State has proven THE defendant's guilt beyond a reasonable doubt is to be made only by the jury.

32

Under the circumstances of this case, we do not conclude that the instruction so prejudicially affected defendant's substantial rights as to have a clear capacity to bring about an unjust result.

5.

Although we agree that Fox should have been qualified as an expert and testified as one, the error was harmless in this case. "[E]ven though an alleged error was brought to the trial judge's attention, it will not be grounds for reversal if it was 'harmless error.'" State v. J.R., 227 N.J. 393, 417 (2017) (quoting State v. Macon, 57 N.J. 325, 337-38 (1971)). "'Convictions after a fair trial, based on strong evidence proving guilt beyond a reasonable doubt, should not be reversed because of a technical or evidentiary error that cannot have truly prejudiced the defendant or affected the end result.'" Ibid. (quoting State v. W.B., 205 N.J. 588, 614 (2011)).

In Kittrell, supra, 279 N.J. Super. at 236, we held — as we do here — that a police witness who presented a purported lay opinion should have testified as an expert, since his opinion was based on his extensive experience and specialized knowledge of drug-related crimes. We concluded the evidentiary error was harmless since "enough evidence was presented to qualify [the detective] as an expert . . . ." Ibid.

33

In United States v. Griffith, 118 F.3d 318, 322-23 (5th Cir. 1997), a case strikingly similar to this one, a Drug Enforcement Agent was not proffered as an expert, but nevertheless interpreted wiretapped conversations involving drug dealers.  Like Fox, the agent testified that her opinions were based on her "knowledge and experience."  Id. at 322.  As in Kittrell, the Fifth Circuit concluded there was sufficient evidence to find that the agent qualified as an expert, and the admission of the testimony as lay opinion was harmless error.  Id. at 323.  "[A]ny error was one of form rather than substance.  [The agent] was clearly qualified; that her credentials were established after she began her substantive testimony, rather than at its outset, did not affect [the defendant's] substantial rights."  Ibid.; see also United States v. Mendoza, 244 F.3d 1037, 1046 (9th Cir.) (finding harmless the admission of lay opinion, instead of expert opinion, where the court "discern[s] from the record that the witness could have been qualified as an expert"), cert. denied, 534 U.S. 897, 122 S. Ct. 221, 151 L. Ed. 2d 158 (2001); United States v. Ramsey, 165 F.3d 980, 984 (D.C. Cir.), cert. denied, 528 U.S. 894, 120 S. Ct. 223, 145 L. Ed. 2d 187 (1999).

We reach the same conclusion here, as it is clear from Fox's testimony during trial (and the N.J.R.E. 104 hearing) that he possessed sufficient education, training, and experience to

34

qualify as an expert in the field of drug trafficking and street slang. This testimony laid the proper foundation for Fox's qualification as an expert. Moreover, defendant does not claim prejudicial surprise.

Furthermore, any error in permitting Fox to testify as to his interpretation of drug slang and code words was rendered harmless by defendant's own admissions that State witnesses correctly identified him on the recordings and he was overheard ordering 100 grams of cocaine on two separate occasions.

## III.

Defendant's sentencing arguments require only brief comment. Contrary to his contention, the court was not compelled to merge the conspiracy count into the substantive count. Generally, a conspiracy to commit an offense merges with the completed offense, when the latter "was the sole criminal objective of the conspiracy." State v. Hardison, 99 N.J. 379, 386 (1985). However, the scope of the conspiracy here involved an agreement to possess with the intent to distribute 200 grams of cocaine, while the substantive offense involved possession with intent to distribute roughly fifty grams seized from his house. In short, the objective of the conspiracy was broader than the substantive offense; therefore, merger was not required.

35

As for the term of imprisonment, the court sentenced defendant below the midpoint of the mandatory extended term range of ten to twenty years. The court found aggravating factors three ("[t]he risk that the defendant will commit another offense"), six ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses which he has been convicted"), and nine ("[t]he need for deterring the defendant and others from violating the law"). See N.J.S.A. 2C:44-1(a)(3), (6), and (9). The court did not find any mitigating factors.

The record does not support defendant's contention that the court should have found mitigating factors seven ("[t]he defendant . . . has led a law-abiding life for a substantial period of time before the commission of the present offense") and eleven ("[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents"). See N.J.S.A. 2C:44-1(b)(7), (11). Defendant did not show that his children would experience "excessive" hardship from his absence, and defendant presented no evidence that he was a significant source of support for his five children. Also, the presentence report noted that the mother, whose address was different than defendant's, "has primary care of the children." See State v. Dalziel, 182 N.J. 494, 505 (2005). Defendant also had an extensive juvenile and adult record spanning

36

from 1985 to 2006. In light of that record, the court was not compelled to find mitigating factor seven.

In sum, we are satisfied, based on our review of the record, that the court set forth its reasons for defendant's sentence with sufficient clarity and particularity, the court's essential findings were supported by competent and credible evidence in the record, the court correctly applied the sentencing guidelines in the Code, and the court did not abuse its sentencing discretion. See State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Cassady, 198 N.J. 165, 180-81 (2009); State v. Roth, 95 N.J. 334, 363-65 (1984).

Finally, the argument presented in defendant's pro se brief lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

37

A-3741-13T3