# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1141-22

STATE IN THE INTEREST
OF S.C., a juvenile.

_____

Submitted November 20, 2024 – Decided May 28, 2024

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0055-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant S.C. (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent State of New Jersey (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

S.C.,[1] a juvenile, appeals from the October 3, 2022 adjudication of delinquency of three offenses that would constitute criminal acts if committed as an adult. S.C. argues the trial court erred when it admitted a detective's video recorded interview with the minor victim under N.J.R.E. 803(c)(27), the tender-years exception to hearsay. We affirm.

I.

In 2021, S.C., then thirteen years old, was charged with acts of delinquency, which if committed by an adult would constitute: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and second-degree sexual assault, N.J.S.A. 2C:14-2(b). The charges arise from S.C.'s sexual assault of his eight-year-old cousin, Z.B.

Prior to trial, the State moved to admit the recorded interview in which Z.B. made numerous statements implicating S.C. pursuant to N.J.R.E. 803(c)(27). The court held an N.J.R.E. 104 hearing. Prior to any testimony, S.C. argued N.J.R.E. 803(c)(27) required Z.B. to testify at the hearing to provide a meaningful opportunity for cross-examination to evaluate the reliability of the

---

[1] We use initials to protect the identity of S.C. and the juvenile victim of sexual assault. R. 1:38-3(c)(9), (d)(5).

recorded statements. The court denied the motion, concluding no legal precedent required the State to produce the victim at an N.J.R.E. 104 hearing on an application under N.J.R.E. 803(c)(27).

Union County Prosecutor's Office Detective Jessica Tattoli testified at the hearing as follows. The detective detailed her several years of experience as an investigator and her training in interviewing children under twelve. On August 21, 2021, at approximately 12:26 a.m., Tattoli was alerted to allegations that an eight-year-old boy had been sexually assaulted. The victim was being evaluated at a hospital. Tattoli was informed that an eyewitness was scheduled to leave for an out-of-state college within a few hours and could not delay his departure.

At about 2:00 a.m., Tattoli met with the eyewitness, R.B., at the local police department. R.B., then eighteen years old, is the uncle of Z.B. He told Tattoli that a few hours earlier he walked into his bedroom and saw his cousin S.C. anally penetrating Z.B. with his penis.

At approximately 2:00 p.m., Tattoli interviewed Z.B. in a child forensic interview room at a Prosecutor's Office facility. Z.B.'s mother was present, but not in the interview room. The interview was recorded and monitored from a different location by a detective, a supervisor, and an assistant prosecutor. The recording of the interview was played for the court.

The detective began the interview by defining the word "truth" and securing Z.B.'s assurance he would give only truthful answers to her questions. She did not, however, ask Z.B. to define the word "truth." In response to the detective's open-ended questions, Z.B. stated he was in R.B.'s bedroom playing a video game at a family party the night before when S.C. entered the room and put "his stuff" in Z.B.'s "butt." He later indicated on an anatomically correct drawing of a boy that "stuff" referred to penis and "butt" referred to anus. Z.B. stated that S.C. pulled down Z.B.'s pants, exposing his buttocks, and penetrated him, which left Z.B. speechless and "shocked." Z.B. stated that "it hurt" when S.C. inserted his penis into Z.B.'s anus and that he was on his hands and knees on the bed while S.C. "was humping [him]." Z.B. said that S.C. threatened to punch him in the chest if he screamed. Z.B.'s infant sister was asleep on the same bed during the assault.

Z.B. stated that R.B. walked into the bedroom and witnessed the assault. R.B. cursed at S.C. and the assault stopped. Z.B. stated that after the assault he told his grandmother and father what happened. According to Z.B., R.B. told Z.B.'s mother what he witnessed. Police officers responded to the scene.

On March 22, 2022, the trial court issued an oral decision granting the State's motion. The court found the State satisfied the notice requirements of

N.J.R.E. 803(c)(27). After finding Tattoli's testimony with respect to her training and experience credible, the court concluded based on the totality of the circumstances Z.B.'s recorded statements to the detective were trustworthy and reliable. The court found Z.B.'s responses to Tattoli's questions to be spontaneous and consistent. The court noted Z.B.'s narrative did not deviate at any point after his initial disclosures to adult relatives.

The court also found Z.B.'s mental state to be consistent with recent victimization, in light of his reluctance to discuss the assault with Tattoli and attempts to divert the conversation with the detective to other subjects. In addition, the court found Z.B. used terminology to discuss intimate body parts that was consistent with an eight-year-old child. The court found nothing in the record indicating Z.B. had anything to gain from falsely accusing S.C. and that the first report of the assault was from Z.B.'s uncle who happened upon the assault while it was taking place. Thus, the court found Z.B. had no motive to fabricate accusations against S.C. and did not initiate disclosure of the assault.

The court noted that S.C.'s counsel argued Z.B. heard adult family members discussing the incident prior to his interview with Tattoli, which likely influenced his statements. However, the court found no evidence in the record Z.B. was interrogated by family members or encouraged to describe the assault

in a particular fashion. Thus, the court found "there is no evidence that suggests that there was any manipulation by adults."

The court also found that Tattoli's interview techniques were not coercive or suggestive and did not have the capacity to distort Z.B.'s recollection of the assault. Nor, the court found, did the detective compromise the reliability of Z.B.'s statements. The court found Tattoli did not lack investigatory independence and did not have a preconceived notion of what happened to the child. The court found that during the interview the detective was careful to let Z.B. tell her what happened and did not suggest answers to her questions. The court found Tattoli used few leading questions and did not influence Z.B.'s statements or recollection. In the instances in which the detective used leading questions, she was redirecting Z.B.'s focus back to the interview. Finally, the court found there was no evidence of outside influence on Z.B.'s statements, such as a previous conversation with his parents or peers.

Based on these findings, the court concluded Z.B.'s recorded statements possessed sufficient indicia of reliability to satisfy N.J.R.E. 803(c)(27). The court, therefore, granted the State's motion.[2]

---

[2] The court entered an order granting the State's motion. The order is dated March 15, 2022, seven days before the court issued its oral decision. It states

A-1141-22

The court held a three-day bench trial at which Z.B., R.B., the expert sexual assault forensic nurse who examined Z.B. shortly after the assault, an expert DNA forensic scientist, the two police officers who responded to the scene of the assault, and a defense expert in forensic biology testified. In addition, a transcript of Tattoli's testimony at the N.J.R.E. 104 hearing and the video recording of the interview were admitted into the record.

Z.B. recounted the assault in a manner consistent with the description he gave to Tattoli. He acknowledged he heard adult relatives discussing the assault with police officers before he was taken to the hospital, but was not asked the contents of the conversations he overheard.

R.B. described in detail his discovery of S.C. sexually assaulting Z.B. R.B. testified that he opened the door to his bedroom intending to get dressed for a date and saw S.C. anally penetrating Z.B. with his penis. The children's pants were around their ankles and R.B. saw their exposed buttocks. Although

---

the motion is granted for the reasons set forth on the record, but does not state the date on which the reasons were set forth on the record. The order also directs the parties to appear on March 21, 2022, the day before the court issued its oral decision. The copy of the order in S.C.'s appendix does not contain a filing date generated by the motion court's electronic filing system. We assume the March 15, 2022 and March 21, 2022 dates are typographic errors or remnants of a prior order and the order granting the State's motion was entered on March 22, 2022, or later.

the lights in the bedroom were off, the television was on and illuminating the room. Photographic evidence established R.B.'s room is small, and the bed on which the sexual assault took place was close to the bedroom door and the television. R.B. recounted his shock and alarm at what he saw and the emotional difficulty he had telling Z.B.'s mother, who is R.B.'s sister, what he witnessed.

The DNA forensic expert testified S.C. could not be excluded as a contributor to a mixed-contributor DNA sample taken from Z.B.'s testicles. In addition, she testified there was very high probability S.C. was a contributor to a mixed-contributor DNA sample taken from Z.B.'s underwear.

On August 8, 2022, the court issued an oral opinion adjudicating S.C. delinquent of all counts. The court found Z.B.'s testimony to be "extremely credible" and consistent from the time he was first interviewed by Tattoli to trial. The court found Z.B.'s body language and demeanor while testifying suggested he was being truthful and that his version of events was believable. The court had "no doubt" Z.B. was telling the truth when he described the sexual assault.

The court also found R.B.'s testimony to be "honest and truthful" and that he testified with a "tone, demeanor, and candor . . . suggest[ing] a lack of bias or motive." The court noted R.B. was troubled by what he observed and

8 <span>A-1141-22</span>

struggled with his testimony because he did not want to hurt his nephew or his cousin, who he stated he still loved, but felt compelled to tell the truth.

The court found the record contained no evidence explaining how S.C.'s DNA could be found on Z.B.'s underwear other than through the alleged sexual assault. The court was not persuaded by the defense theory that S.C.'s DNA was casually transferred to Z.B.'s underwear. The court found the record proved beyond a reasonable doubt S.C. committed each of the charged offenses.

On October 3, 2022, the court, after weighing the aggravating and mitigating factors, N.J.S.A. 2A:4A-44, imposed a disposition of thirty-six months of probation, in-patient residential treatment for sex offenders, a two-year suspected sentence at the Training School for Boys, and Megan's Law registration.

This appeal followed. S.C. raises the following argument.

> THE TRIAL COURT ERRED IN ADMITTING THE TENDER-YEARS STATEMENT WITHOUT CONSIDERING THE FACT THAT THE COMPLAINANT HEARD SEVERAL ADULTS DISCUSS THE ALLEGATIONS.

## II.

For the first time on appeal, S.C. argues the trial court should have sua sponte reconsidered its decision to admit Z.B.'s out-of-court statements when it

heard testimony that Z.B. overheard adults discussing the assault before he was taken to the hospital. S.C. notes that at the N.J.R.E. 104 hearing the court heard testimony only from Tattoli, and he did not have an opportunity to cross-examine Z.B. to explore what he may have overheard at the scene. S.C. also notes that at trial Z.B. testified he heard his adult relatives discussing the assault with the responding officers. In addition, one of the officers confirmed Z.B.'s presence while she interviewed his parents, but could not recall what she said while he was nearby. S.C. argues Z.B.'s exposure to adult conversations had the clear capacity to influence his recollection of what occurred and undermined the trustworthiness of his out-of-court statements, which should have triggered the court's reexamination of its decision to admit those statements.

The State argues we should decline to consider S.C.'s argument because he failed to raise it in the trial court. In addition, the State argues that if we consider S.C.'s argument, the record clearly supports the trial court's admission of Z.B.'s statements to the detective and the court was not required to reconsider its decision to admit those statements.

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012); see also State v. Robinson, 200 N.J. 1, 19 (2009) (explaining that appellate

10

courts refrain from addressing issues not developed in the trial court). While we agree S.C. failed to request the trial court reconsider its decision to admit Z.B.'s out-of-court statements, he initially objected to the admission of the statements and, after the close of the N.J.R.E. 104 hearing argued Z.B.'s exposure to his adult relatives' discussion of the sexual assault rendered his out-of-court statements unreliable. S.C. has, therefore, sufficiently preserved the issue for appellate review.

We review a trial court's evidentiary rulings with deference. State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). An abuse of discretion is found only when the court has made a "clear error of judgment." State v. Koedatich, 112 N.J. 225, 313 (1988). The court's evidentiary decision should be sustained unless it resulted in a "manifest denial of justice." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to

prove the truth of the matter asserted in the statement."  N.J.R.E. 801(c).

Hearsay is not admissible unless subject to a specific exception.  N.J.R.E. 802.

N.J.R.E. 803(c)(27) provides an exception to the exclusion of hearsay

statements by a child relating to a sexual offense.  The rule provides that

> [a] statement made by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a . . . juvenile. . . case if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.
>
> [N.J.R.E. 803(c)(27).]

As the Supreme Court explained:

> N.J.R.E. 803(c)(27) requires the trial judge to conduct a preliminary hearing pursuant to N.J.R.E. 104(a) to determine whether an out-of-court statement is sufficiently reliable, based on the "time, content and circumstances of the statement" and then decide what is the "probability that the statement is trustworthy." State v. D.G., 157 N.J. 112, 128 (1999).  In determining

12

whether the statement satisfies that standard, the judge should consider "the totality of the circumstances." State v. Roman, 248 N.J. Super. 144, 152 (App. Div. 1991).

In Idaho v. Wright, [497 U.S. 805, 821-22 (1990),] the United States Supreme Court summarized a non-exclusive list of factors relevant to evaluating the reliability of out-of-court statements made by child victims of sexual abuse, including spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate.

[State v. P.S., 202 N.J. 232, 249 (2010).]

Having reviewed the record, we conclude the trial court did not abuse its discretion either when it admitted Z.B.'s out-of-court statements or when it did not sua sponte reexamine that decision. The trial court, after a hearing, made credibility determinations and findings of fact with respect to the admissibility of Z.B.'s out-of-court statements to Tattoli that are amply supported by the record. The court addressed each of the factors noted in P.S. and found Z.B.'s statements to be credible.

After the N.J.R.E. 104 hearing, S.C.'s counsel argued Z.B. heard the assault being discussed by adult family members prior to his interview with Tattoli, tainting the reliability of his statements. The court found, however, the record contained no evidence Z.B. was interrogated by adult family members or

encouraged to describe the assault in a particular fashion. Thus, the court found "there is no evidence that suggests that there was any manipulation by adults" of Z.B.

At trial, Z.B. confirmed he heard his adult relatives discussing the sexual assault with police officers. Z.B.'s testimony did not identify the contents of the conversations he overheard. Nor did the officer who confirmed Z.B.'s presence while she discussed the assault with his parents recall what was said while the child was present. There is nothing in the record supporting S.C.'s argument the testimony at trial required the court to sua sponte reconsider its decision to admit Z.B.'s out-of-court statements. No witness suggested Z.B. was interrogated by an adult or told how to describe the assault. The child's consistent description of what transpired, including his use of age-appropriate terms for intimate body parts, belies the notion that adults manipulated Z.B. or encouraged him to fabricate the details of the assault. In addition, R.B. made the initial disclosure after witnessing the assault. He reported S.C.'s anal penetration of the child.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[3] Because we find no error in the admission of Z.B.'s out-of-court statements, we do not address the overwhelming strength of the other evidence supporting the verdict, including R.B.'s eyewitness testimony and scientific evidence highly suggestive of the presence of S.C.'s DNA on Z.B.'s underwear.