**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5493-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HORACE J. GORDON, a/k/a
DEON DILLARD, JAMES
MCKOY, TERRENCE MILLER,
AND TERRANCE MILLER,

    Defendant-Appellant.

_____

Submitted October 28, 2020 – Decided November 20, 2020

Before Judges Ostrer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 16-02-0181.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert J. De Groot and Oleg Nekritin, Designated Counsel, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Monica Martini, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Horace Gordon was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(2); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-4(a); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(b). Defendant challenges his conviction and sentence. We affirm.

In June 2015, defendant attended a party, hosted by Errick Schanck and his girlfriend, to celebrate Harvey Sharp's twenty-ninth birthday. Defendant spent time drinking and talking with Sharp. Close to midnight, Schanck and his girlfriend wanted their guests to depart, so Sharp informed defendant it was time to leave. Defendant left Schanck's home, but soon returned. Sharp confronted defendant outside the home and urged him again to leave the premises. The pair exchanged words and according to one eyewitness, defendant told Sharp "I've got something for you." Defendant pulled out his revolver and shot Sharp in the chest.

Schanck's girlfriend, who was outside the home, heard defendant's gun discharge. She looked up and observed defendant point his arm in the direction of the front door before another shot rang out and a flash appeared near defendant's hand.

A-5493-17T4

Sharp ran toward the house and fell inside the front door. Schanck's girlfriend called 9-1-1 after she and her daughter saw Sharp bleeding from his chest wound. Sharp died within hours of the incident.

Detectives who investigated the shooting recovered surveillance video from two nearby businesses. The footage showed defendant and Sharp in the street before the shooting, as well as flashes from defendant's gun at the time the shooting occurred.

At trial, the State called Schanck and his girlfriend to testify about the incident. Both witnesses confirmed they saw defendant shoot Sharp. The State also produced Detective Scott Rich to testify about the homicide investigation. According to Detective Rich's lay testimony, a .22 caliber round bullet was found on the road near the crime scene. He described the bullet as "corroded" and asserted it was never fired from a gun. Because he believed the bullet was lying at its location for a long time, he concluded it was not related to Sharp's murder.

Defendant also testified at trial. On direct examination, he acknowledged he had a criminal history and served time in prison. Asked by his attorney about his sentences, defendant responded, "I got probation for all except for one . . . . I did four years for a weapon." Additionally, he admitted on direct examination

3

to owning a gun, even though the parties stipulated at the beginning of the trial that on the date of the shooting, he did not have a gun permit. Following defendant's direct examination, the judge gave the jury a limiting instruction, stating, in part:

> So, you've heard evidence that [defendant] has previously been convicted of crimes. This evidence may only be used in determining the credibility or believability of defendant's testimony. You may not conclude that the defendant committed the crimes charged in this case or is more likely to have committed those crimes charged simply because he committed crimes on a prior occasion.

On cross-examination, defendant admitted he was convicted of five prior indictable offenses. When the prosecutor inquired about a 2008 conviction that followed on the heels of his release from incarceration, defendant asked, "is it alright if I explain it to them?" The prosecutor replied, "It's up to you." Defendant volunteered the particulars of a conviction for receiving stolen property. Based on his description of the offense, the prosecutor questioned whether defendant believed the offense was "someone else's fault." He replied, "yes." Subsequently, he intimated he was not responsible for two of his five prior convictions, but "everything else . . . [he] really felt like it was [his] responsibility to take the charge for."

A-5493-17T4

Regarding the shooting, defendant testified, he "felt like [he] had to do what [he] had to do because [Sharp] wouldn't listen to him" and "[i]t happened fast. It was out of fear." Further, he testified he suspected Schanck called two individuals to the scene prior to the shooting and that one of the individuals crouched behind a nearby truck with a gun. As cross-examination continued, defendant shifted his story and stated the person behind the truck was Schanck. When the prosecutor challenged this recollection, defendant asserted, "I'm thinking like now it's unfolding. I think that's what happened." Defendant conceded he fired two shots from his .38 revolver when Sharp confronted him in the street, but he claimed he reacted out of fear. He testified he did not intend to shoot Sharp, to which the prosecutor responded, "You certainly did."

During closing argument, the prosecutor mentioned that children were present in the area at the time of the shooting and that after Sharp was shot, he lay dying in front of Schanck's daughter. Additionally, the prosecutor discussed Schanck's emotional testimony about the incident. She told jurors,

> I'm certain [Schanck] did not want to come in and cry in front of this jury . . . ., but he did because when he said to you that he saw his best friend get murdered in front of his eyes, he welled up . . . . Your observations control, but he was trying to be strong. He said I'm fine, I'm good, I'm good. But his eyes said something different.

Further, the prosecutor noted the jurors were compelled to consider the reasonable doubt standard and explained:

> [y]ou make . . . decisions in your everyday life. Which house are you going to buy? Are you certain beyond any reasonable doubt that it's the right house for you? Well, no, but you're firmly convinced it's the right house. Which car, what you're going to eat for lunch? You're firmly convinced that that's what you want. That's all that's required of you in a criminal case.

Upon conclusion of the attorneys' summations, the judge instructed the jury that their remarks "are not evidence and must not be treated as evidence."

After deliberating for two days, the jury found defendant guilty of all charges. At sentencing, the judge merged the charge for possession of a weapon for an unlawful purpose with the murder charge and imposed a forty-five-year term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Additionally, he sentenced defendant to a concurrent five-year term, with a forty-two-month parole disqualifier for the remaining handgun offense.

On appeal, defendant raises the following arguments:

> POINT I
>
> THE COURT MUST REVERSE THE GUILTY VERDICT AND REMAND THE MATTER FOR A NEW TRIAL DUE TO THE PROSECUTOR'S PATTERN OF MISCONDUCT WHICH INCLUDED MOCKING AND ATTACKING THE DEFENDANT'S

6

CHARACTER, COMPARING THE "REASONABLE DOUBT" STANDARD TO DECIDING WHAT TO HAVE FOR LUNCH, EXPRESSING A PERSONAL OPINION AS TO THE DEFENDANT'S GUILT DURING CROSS EXAMINATION, BOLSTERING A WITNESS'S CREDIBILITY BY VOUCHING FOR HIS SINCERITY BASED ON WHAT SHE OBSERVED IN HIS EYES, SUGGESTING THAT THE DEFENDANT'S CONDUCT PLACED A BABY AND OTHER CHILDREN IN THE COMMUNITY IN DANGER, AND QUESTIONING THE DEFENDANT ABOUT THE UNDERLYING FACTS OF HIS PREVIOUS CONVICTIONS.  (Not raised below).

A.  The Prosecutor violated [Brunson][1] by constantly citing to the Defendant's previous convictions, which included an unlawful weapon's possession charge.  The Prosecutor also improperly used the weapon's possession charge to question the Defendant about the duration of him carrying a weapon outside of the indictment's allegations. (Not raised below).

B.  The Prosecutor committed misconduct when she attempted to bolster the credibility of a State witness by personally vouching for the witness and arguing that his "eyes" and emotions showed his testimony was credible.  (Not raised below).

C.  The Prosecutor's references to the Defendant either placing a baby and other children in danger or emotionally scarring a baby was improper and highly prejudicial.  (Not raised below).

D.  The Prosecutor's editorializing and argumentative commentary during the

---

[1]  State v. Brunson, 132 N.J. 377 (1993).

Defendant's cross examination was improper, as it included a personal opinion about the Defendant's guilt. (Not raised below).

E.   The Defendant's conviction must be reversed because the State diluted the reasonable doubt standard during its summation. (Not raised below).

POINT II

THE COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED DETECTIVE RICH TO TESTIFY THAT A LIVE ROUND BULLET FOUND AT THE SCENE OF THE SHOOTING WAS THERE PREVIOUSLY FOR AN EXTENDED PERIOD OF TIME AND THEREFORE COULD NOT HAVE BEEN USED DURING THE INCIDENT, WHEN THIS OFFICER WAS NEVER QUALIFIED AS AN EXPERT. (Not raised below).

POINT III

THE COURT IMPROPERLY WEIGHED THE AGGRAVATING AND MITIGATING FACTORS WHEN SENTENCING THE DEFENDANT. THE SENTENCE MUST BE VACATED AND THE MATTER REMANDED FOR RESENTENCING.

To the extent defendant's contentions were not raised before the trial court, we review them through the prism of the plain error standard. R. 2:10-2. Under that standard, "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." Ibid.

Regarding Point I, we acknowledge that "[p]rosecutorial misconduct is a basis for reversal of a criminal conviction if the conduct was so egregious that it deprived the defendant of the right to a fair trial." State v. Gorthy, 226 N.J. 516, 540 (2016) (quoting State v. Josephs, 174 N.J. 44, 124 (2002)). However, prosecutors are generally permitted to pursue their duties "with earnestness and vigor," State v. Tilghman, 345 N.J. Super. 571, 575 (App. Div. 2001), and "a 'fleeting and isolated' remark is not grounds for reversal," Gorthy, 226 N.J. at 540 (quoting State v. Watson, 224 N.J. Super. 354, 362 (App. Div. 1988)). The alleged misconduct must be viewed in the context of the totality of the evidence, to determine whether it may have affected the outcome of trial and produced an unjust result. State v. Pressley, 232 N.J. 587, 593-94 (2018). Counsel's failure to timely object is indicative of his or her belief that the remarks were not prejudicial. Id. at 594.

As to Point I A., defendant seeks reversal of his conviction due to the prosecutor's purported violation of the principles outlined in State v. Brunson, 132 N.J. 377 (1993). We are not persuaded.

In Brunson, the Supreme Court held that when a testifying defendant was previously convicted of an offense similar to the one currently charged, the State may only introduce evidence regarding the degree of the crime and date of the

offense, but must exclude any evidence of the specific crime. Id. at 391. This balancing test serves to "insure that a prior offender does not appear to the jury as a citizen of unassailable veracity" and allows the State to use the conviction to attack the defendant's credibility, id. at 391-92, while avoiding "the extraordinary prejudice that follows if the prior crime was specifically named or described," id. at 392 (quoting State v. Pennington, 119 N.J. 547, 607 (1990)).

The Supreme Court extended the Brunson holding to evidence of non-similar convictions in State v. Hamilton, 193 N.J. 255, 268-69 (2008). Subsequently, in 2014, N.J.R.E. 609 was amended to reflect the holdings of recent caselaw, including Brunson and Hamilton. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 609 (2019).

The record reflects that here, defendant opened the door and educated jurors about the underlying details of some of his criminal convictions, and provided inconsistent statements about such convictions. For example, defendant asserted he was convicted of a gun offense in 1999, then later denied it. He also implied that his first offense was not his fault, and he "had to plead guilty" because someone hid a gun outside, unbeknownst to him. Later, defendant asserted he "was in the wrong" and made some bad decisions.

"The opening the door doctrine . . . permits a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." State v. Prall, 231 N.J. 567, 582-83 (2018) (internal citation omitted). The purpose of the doctrine is to prevent defendants from excluding inadmissible evidence from the State's case and then utilizing pieces of that evidence to their own advantage. Id. at 583. The evidence can be admitted "in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection." Id. at 582 (citing State v. James, 144 N.J. 538, 554 (1996)). The doctrine, though, is limited by the N.J.R.E. 403 analysis of weighing the evidence's probative value against its prejudicial nature. Id. at 583.

In State v. Buffa, 51 N.J. Super. 218, 233 (App. Div. 1958), we upheld the prosecutor's cross-examination of a defendant about his juvenile record after he raised the matter on direct examination. We stated, "[c]ertainly the State is not compelled to stand by helplessly when a defendant misrepresents the number or character of his prior convictions." Ibid.

Here, the prosecutor did not question defendant about his prior gun ownership and felony convictions until defendant volunteered specifics. Moreover, defendant's only objection to questions regarding his prior

convictions occurred when the prosecutor asked: "Is it possible with five different convictions and you carrying two different guns over the course of over a decade, it's actually you that's scary in Trenton?" The judge overruled defendant's objection to this remark but instructed jurors regarding the limited purpose for which they could consider defendant's prior convictions. Thus, we are satisfied the prosecutor's handling of defendant's prior convictions, did not amount to plain error. See State v. Tillery, 238 N.J. 293, 302 (2019).

Additionally, we are not convinced that other statements made by the prosecutor rise to the level of misconduct. For example, during cross-examination, the prosecutor told defendant, "the truth will set you free." Also, as defendant testified Schanck invited individuals to the scene, his narrative about who was crouched behind the truck changed. In response to defendant's statements, the prosecutor responded, "as you go along, the facts that you're making up are making less and less sense. Was it [Schanck] or are you not sure who it was?" She added, "[t]hese people, these figments of your imagination they might be coming, but you don't see them, right?" Defense counsel did not object to any of these remarks.

We cannot conclude these comments from the prosecutor rose to the level of misconduct, but even if they did, we are persuaded the challenged remarks

A-5493-17T4

were not clearly capable of producing an unjust result. R. 2:10-2. We arrive at this determination because no other witness testified to a third individual's presence behind a nearby vehicle and defendant struggled to maintain a credible narrative as to his self-defense claim. Also, surveillance videos, defendant's admission he shot Sharp, and eyewitness testimony about the shooting provided significant evidence of defendant's guilt.

Next, we disagree that the prosecutor's statements pertaining to Schanck's emotional testimony was inappropriate. "A prosecutor may argue that a witness is credible, so long as the prosecutor does not personally vouch for the witness or refer to matters outside the record as support for the witness's credibility." State v. Walden, 370 N.J. Super. 549, 560 (App. Div. 2004) (citing State v. Scherzer, 301 N.J. Super. 363, 445 (App. Div. 1997)). Here, the prosecutor clearly implied that Schanck was credible, but she did not do so based on information outside the evidence. Rather, she asked jurors to recall Schanck's demeanor, which, obviously, was visible to them during his testimony.

Demeanor of a witness is one of the factors that a jury is entitled to consider in determining whether a witness is worthy of belief and, therefore, credible. See Model Jury Charges (Criminal), "Criminal Final Charge – Credibility of Witnesses" (rev. May 12, 2014). Indeed, in his final charge, the

judge appropriately instructed jurors they could reflect on the demeanor of witnesses who testified. Accordingly, the prosecutor's comments respecting Schanck's demeanor provide no basis for reversal.

We also are not persuaded that the prosecutor wrongfully discussed the presence of children, including Schanck's daughter, on the night of the shooting. In fact, her remarks were relevant and properly tied to defendant's testimony.

Relevant evidence is evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action," N.J.R.E. 401, and is admissible, absent a specific exception, N.J.R.E. 402. State courts have broadly defined relevance in such a way as to favor admissibility. State v. Davis, 96 N.J. 611, 619 (1984). However, relevant evidence may be "excluded if its probative value is substantially outweighed by the risk of (a) [u]ndue prejudice, confusion of issues, or misleading the jury; or (b) [u]ndue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403. It also will be excluded where the court finds that its probative value is substantially outweighed by its inflammatory potential and will likely prevent the jury from fairly evaluating the issues. State v. Koskovich, 168 N.J. 448, 486 (2001). This requires more than a "mere possibility that evidence could be

prejudicial" to the jury.  Ibid. (quoting State v. Morton, 155 N.J. 383, 453-54 (1998)).

It is well established that prosecutors must refrain from "highly emotional" or "inflammatory" remarks that could potentially "anger and arouse the jury and thereby divert them from their solemn responsibility to render a verdict based on the evidence."  State v. Marshall, 123 N.J. 1, 161 (1991).  They should not play on the jury's sentiments, State v. Black, 380 N.J. Super. 581, 594 (App. Div. 2005), at the risk of producing "a verdict fueled by emotion rather than a dispassionate analysis of the evidence," id. at 595.

The record reflects that on direct examination, defendant testified he carried a gun because "the area is wild" and he needed protection due to the volume of crime in the area.  Moreover, after he first fired at Sharp, defendant denied shooting toward Schanck's house.  He claimed he fired a second shot at a nearby truck because he saw someone hiding behind it and needed to defend himself.  The prosecutor questioned defendant about children in the area to refute his claim of needing a gun for protection.  She also provided a fleeting comment that Sharp was bleeding in front of Schanck's child after defendant stated he would not have fired his second shot toward the house because he was aware a child was inside.  In this context, we are persuaded the prosecutor was

entitled to challenge the heart of defendant's self-defense claim and that her comments were not designed to impassion the jury. Moreover, her limited comments were not capable of producing an unjust result, considering the substantial evidence of defendant's guilt. See Gorthy, 226 N.J. at 540.

Regarding the prosecutor's rejection of defendant's testimony that he did not intend to kill Sharp, we are mindful "it is improper for the prosecutor to declare [an] individual or official opinion or belief of a defendant's guilt in such manner that the jury may understand the opinion or belief to be based upon something which [the prosecutor] knows outside the evidence." State v. Thornton, 38 N.J. 380, 398 (1962). However, the prosecutor's expression of a personal belief in defendant's guilt does not constitute reversible error when it is based upon the evidence before the jury, rather than knowledge and facts not before the jury. State v. Harper, 128 N.J. Super. 270, 279 (App. Div. 1974). Stated differently, the error occurs when the prosecutor states or implies that his or her belief is based on facts not before the jury, such as the prosecutor's expertise or superior knowledge. State v. Hipplewith, 33 N.J. 300, 311 (1960).

Prosecutors are permitted "to vigorously and forcefully present the State's case." State v. Timmendequas, 161 N.J. 515, 582 (1999) (citing State v. Rose, 112 N.J. 454, 509 (1988)). It does not constitute error where a forceful

presentation during a defendant's cross-examination yields inflammatory or damaging information, particularly where the prosecutor does not mischaracterize the information and the defendant's statements are made knowingly and voluntarily.  Ibid.

Additionally, when defendants waive their right to remain silent and choose to testify, they subject themselves to vigorous cross-examination regarding the credibility of their stories.  See State v. Robinson, 157 N.J. Super. 118, 120 (App. Div. 1978) (where defendant was denied a new trial despite the prosecutor's closing remarks that defendant's story seemed "incredible . . . unbelievable . . . [and] fabricated").  "It is . . . not improper for a prosecutor to comment on the credibility of a defendant's testimony."  State v. Darrian, 255 N.J. Super. 435, 458 (App. Div. 1992) (citing Robinson, 157 N.J. Super. at 120).

Here, the State had the burden of proving beyond a reasonable doubt that defendant's asserted self-defense claim did "not accord with the facts; acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense."  State v. Kelly, 97 N.J. 178, 200 (1984) (citing State v. Abbott, 36 N.J. 63, 72 (1961)).  Thus, the State's burden necessarily subjected defendant to aggressive questioning about his self-defense claim.  However, defense counsel was not deprived of the opportunity to object to the prosecutor's cross-

examination, nor to ask appropriate rehabilitative questions on redirect. Therefore, we decline to conclude the prosecutor's remarks constituted prosecutorial misconduct. Moreover, we reiterate that due to the evidence the State marshalled against defendant, we are not persuaded the prosecutor's comments produced an unjust result.

We need not discuss at length the prosecutor's discussion of the reasonable doubt standard during her closing statement. Although the prosecutor advanced an unusual comparison between the jury's obligations to determine defendant's guilt or innocence to everyday decisions they might make, in the context of the overall record, her comments did not dilute the reasonable doubt standard. Our conclusion is bolstered by the fact that the prosecutor also included in her closing remarks that jurors should understand that

> [b]eyond a reasonable doubt does not mean proof beyond any doubt, it does not mean proof beyond any possible doubt. There are very few things in life that we know beyond . . . any possibility of doubt . . . . What it means is that you are firmly convinced . . . . [A]nd listen for it when the judge reads you that instruction because you'll hear those words.

"We review the challenged portions of a prosecutor's summation in the context of the entire summation." State v. Vasquez, 374 N.J. Super. 252, 262 (App. Div. 2005). "Prosecutors are afforded considerable leeway in closing

18

arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). Guided by these principles, we perceive no basis to find reversible error concerning the prosecutor's comments about the reasonable doubt standard. Much of what she told jurors about this standard mirrored the model definition, and the judge also instructed the jury regarding reasonable doubt, consistent with the Model Jury Charge. Moreover, the judge cautioned jurors to disregard "any statements by the attorneys as to what the law may be" if those statements "are in conflict with my charge."

Reviewing courts presume a jury followed the trial court's instructions. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019). Indeed, this "presumption is '[o]ne of the foundations of our jury system.'" Id. at 504 (quoting State v. Burns, 192 N.J. 312, 335 (2007) (alteration in original)). As defendant did not object to the State's summation, and the trial judge properly instructed the jury concerning reasonable doubt, we conclude the judge did not commit plain error by allowing the prosecutor some latitude in addressing the reasonable doubt standard.

Regarding Point II, we note Detective Rich, as a lay witness, was permitted to testify that a bullet found at the crime scene during the investigation

was corroded and unrelated to the murder. Defense counsel revisited this testimony during cross-examination by exploring when the detective became aware a bullet was at the scene and whether this was the same caliber of bullet that killed the victim. It is evident defendant intended to use this line of questioning to further his self-defense theory, i.e., that another individual hiding behind a truck where the shooting occurred, possessed a gun that produced a .22 caliber bullet.

Lay witness testimony "in the form of opinions or inferences may be admitted if it: (a) is rationally based on the witness's perception; and (b) will assist in understanding the witness's testimony or in determining a fact in issue." N.J.R.E. 701. The former requirement necessitates that the witness has actual knowledge of the matter testified to, acquired through his or her senses. State v. McLean, 205 N.J. 438, 456-57 (2011). Lay witnesses may give opinions as to "matters of common knowledge and observation." State v. Johnson, 120 N.J. 263, 294 (1990) (citing State v. Labrutto, 114 N.J. 187, 197 (1989)). Generally, however, lay witness testimony should not enter "into the realm of expert testimony." State v. Kittrell, 279 N.J. Super. 225, 236 (App. Div. 1995).

"We recognize that the line between permissible and impermissible lay opinion from police officers is not always self-evident, and that some degree of

case-by-case analysis may be necessary." Rice v. Miller, 455 N.J. Super. 90, 106 (App. Div. 2018). We previously found a trial court's error in allowing lay opinion testimony was harmless where a police officer had the qualifications to testify as an expert in a matter. In State v. Hyman, 451 N.J. Super. 429, 437-38 (App. Div. 2017), a detective who had been involved in hundreds of drug-related investigations testified to the meaning of certain drug-related jargon that he overheard on a wiretap. We concluded the detective should have been qualified as an expert before testifying to the issue, but the error was harmless because he possessed sufficient credentials to qualify as an expert and because the evidence of the defendant's guilt was so strong. Id. at 457-59.

A similar analysis applies here, particularly given the officer's level of experience with the prosecutor's office and the limited nature of his testimony. Although evidence about the character of a bullet ordinarily should be presented through expert testimony, we are satisfied any error in allowing Detective Rich to describe the corroded nature of the bullet and the determination it had not been fired was harmless. Again, defendant did not object to the detective's testimony. Also, the only evidence in the record of other individuals at the scene was defendant's inconsistent and contradictory testimony. Further, there is nothing in the record to suggest a third party fired a gun at the scene of the

shooting.  Thus, we are satisfied any error in permitting this testimony, where there was substantial evidence of defendant's guilt, was not clearly capable of producing an unjust result.  R. 2:10-2.

Finally, we address defendant's contention in Point III that the trial judge improperly weighed aggravating and mitigating factors during sentencing. Defendant argues we should vacate his sentence and remand this matter for resentencing because the judge improperly found aggravating factors N.J.S.A. 2C:44-1(a)(3) (the risk defendant will commit another offense), (a)(6) (the extent of defendant's prior criminal record), and (a)(9) (the need to deter) applied.  Additionally, as he continues to maintain he shot Sharp out of fear, defendant contends the judge improperly rejected mitigating factor N.J.S.A. 2C:44-1(b)(2) (the defendant did not contemplate his conduct would cause or threaten serious harm).  These arguments lack merit.

Our review of sentencing determinations is limited.  State v. Liepe, 239 N.J. 359, 370-71 (2019).  We review such determinations under an abuse of discretion standard.  State v. Blackmon, 202 N.J. 283, 297 (2010).  Accordingly, we must affirm a trial court's sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application

22

of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Additionally, we do not substitute our assessment of the factors for that of the trial court. State v. Bieniek, 200 N.J. 601, 608 (2010).

The Supreme Court has stated that aggravating factors three, six and nine are "arguably" linked together as "recidivism" factors. State v. Thomas, 188 N.J. 137, 148-49 (2006) (citing State v. Abdullah, 184 N.J. 497, 499 (2005)). Here, the judge made the qualitative assessment about the "recidivism" factors required by caselaw. He began by providing a comprehensive evaluation of defendant's background that included his physical and mental health, his history of substance abuse and criminal offenses, and other personal factors. The record reflects the judge did not find aggravating factor three based solely on defendant's substance abuse history, but instead addressed how defendant's substance abuse history was linked to his criminal history. The judge also made a qualitative assessment regarding aggravating factor six, considering the totality of defendant's criminal record, which spanned the period from 1999 to 2014 and included two handgun offenses.

As to aggravating factor nine, the judge specifically stated he needed to deter defendant and others from committing such a "heartless" and "senseless," offense and he was obliged to "send a message to this defendant that [the court needed] to protect the public from the conduct that this defendant showed when he shot and killed the deceased."

Additionally, the judge found no mitigating factors, including mitigating factor two, applied. He noted the jury rejected defendant's claim of self-defense. Further, the judge found that after defendant shot Sharp, he "had the wherewithal . . . to turn around a second time and attempt to shoot [Sharp] in the back but he missed." In light of these findings and our deferential standard of review, we are persuaded the judge did not abuse his discretion when sentencing defendant. Instead, his findings are amply supported by the record.

To the extent defendant's remaining arguments were not addressed, we are satisfied they lack merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5493-17T4