**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3775-19

MCCARTER & ENGLISH, LLP,

    Plaintiff-Respondent,

v.

MOERAE MATRIX, INC.,

    Defendant-Appellant.

_____

Submitted March 10, 2021 – Decided July 27, 2021

Before Judges Ostrer, Accurso, and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2214-19.

Pinilis Halpern, LLP, attorneys for appellant (William J. Pinilis, on the briefs).

McCarter & English, LLP, attorneys for respondent (Joseph Lubertazzi, Jr. and Daniel P. D'Alessandro, on the brief).

PER CURIAM

Defendant Moerae Matrix, LLP, a former client of plaintiff law firm McCarter & English, LLP, appeals from June 5, 2020 orders: (1) granting plaintiff summary judgment on its claim for $837,524.19 in unpaid legal fees, plus interest and costs of suit, and quashing a notice of deposition defendant served upon an attorney with plaintiff's firm following the conclusion of discovery; and (2) denying defendant's motion to amend its pleadings to assert a counterclaim and third-party complaint against plaintiff.[1]  Having considered the parties' arguments in light of the record and applicable legal principles, we find the court properly granted plaintiff summary judgment because defendant failed to present competent evidence rebutting plaintiff's prima facie showing its fees were fair and reasonable, and defendant failed to demonstrate the court abused its discretion by denying defendant's motion to amend its answer to add a counterclaim.  We therefore affirm the court's orders.

---

[1]  The parties' briefs mention that defendant moved for leave to amend its pleadings to add a counterclaim and third-party complaint.  Defendant does not argue on appeal the court erred by denying its motion for leave to amend its pleadings to add the third-party complaint, and the record on appeal does not include a copy of a proposed third-party complaint.  Thus, it is unnecessary that we address the portion of the court's order denying defendant's request for leave to file the third-party complaint, see Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("[I]ssue[s] not briefed on appeal [are] deemed waived."); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same), and we therefore consider only defendant's claim the court erred by denying its motion for leave to amend its pleadings to add a counterclaim.

I.

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court."  Abboud v. Nat'l Union Fire Ins., 450 N.J. Super. 400, 406 (App. Div. 2017).  This standard mandates the grant of summary judgment "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).

In our review of a summary judgment record, we limit our determination of the undisputed facts to those properly presented in accordance with Rule 4:46-2.  Under the Rule:

> [A] party moving for summary judgment is required to submit a "statement of material facts" . . . "set[ting] forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted."
>
> [Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(a)).]

"The citation [to the motion record] shall identify the document and shall specify the pages and paragraphs or lines thereof or the specific portions of exhibits relied on" in support of each statement of material fact.  R. 4:46-2(a).

"[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'" Claypotch, 360 N.J. Super. at 488 (quoting R. 4:46-2(b)). "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." R. 4:46-2(b).

Rule 4:46-2's requirements are "critical" and "entail[] a relatively undemanding burden." Housel v. Theodoridis, 314 N.J. Super. 597, 604 (App. Div. 1998). They were "designed to 'focus [a court's] . . . attention on the areas of actual dispute' and [to] 'facilitate the court's review' of the motion." Claypotch, 360 N.J. Super. at 488 (second alteration in original) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:46-2 (2003)). A court must decide a motion for summary judgment based only on the "factual assertions . . . that were . . . properly included in the motion [for] and [in opposition to] . . . summary judgment" pursuant to Rule 4:46-2. Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998); see also Lombardi v. Masso, 207 N.J. 517, 549 (2011) (Rivera-Soto, J., dissenting) (stating a trial court must decide a summary judgment motion

"[b]ased on the [Rule]-defined, specifically tailored summary judgment record before it").  Consistent with those principles, we consider only "those [properly included] factual assertions" on appeal.  Kenney, 308 N.J. Super. at 573; see also Lombardi, 207 N.J. at 549 (Rivera-Soto, J., dissenting) ("That limitation—that a summary judgment determination is defined and limited by the summary judgment record—also applies on appeal.").  Thus, in our review of the court's summary judgment order, we consider only the undisputed facts established by the parties' Rule 4:46-2 statements.  See Kenney, 308 N.J. Super. at 573.

Applying that standard, the motion record presented the following undisputed facts.  Defendant retained plaintiff, pursuant to an August 2017 engagement letter, to provide legal services "in a series of matters, including . . . general intellectual property . . . and patent matters."  "By executing the [e]ngagement [l]etter," defendant agreed to the accompanying "[t]erms of [e]ngagement," including plaintiff's hourly rates.[2]  The engagement

_____

[2]  The engagement letter sets the respective hourly rates of the two attorneys who performed legal services at $630 and $340.

letter also required payment "promptly upon [defendant's] receipt of [plaintiff's] statement[s]."[3]

Plaintiff "regularly" emailed invoices to defendant "for the legal fees and expenses incurred throughout the course of [plaintiff's] representation of [defendant]." "The[] invoices . . . detailed . . . the work performed and [the] fees and expenses incurred [by plaintiff on behalf of defendant], the attorneys involved, the amount of time expended for tasks, the date such tasks were performed, and the monies due and owing."[4] Although defendant made "certain

---

[3] The engagement letter also provided that "if [plaintiff] bring[s] an action to collect amounts due [from defendant,] . . . [plaintiff] will be entitled to recover the costs and fees incurred by [plaintiff]" in bringing the action.

[4] In the record presented on appeal, defendant does not provide plaintiff's invoices, and the record shows the invoices were not submitted to the motion court as an exhibit to an affidavit or certification. See R. 1:6-6. Instead, the invoices were submitted to the court separate from the summary judgment motion papers and the parties' Rule 4:46-2 statements. Defendant provides only a detailed statement of account, which shows the amounts billed, payments made, and the balance plaintiff claims is owed. As a result, we are unable to independently assess the invoices either to confirm their contents or to render an independent determination concerning the reasonableness or fairness of plaintiff's fees. See R. 2:6-1(a)(1)(I) (requiring an appellant to provide "such . . . parts of the record . . . as are essential to the proper consideration of the issues" in its appendix on appeal); see also Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002) (finding because an appellant's failure to adhere to the requirements of Rule 2:6-1(a)(1)(I) "rendered review on the merits impossible, we ha[d] no alternative but to affirm"). However, in its response to plaintiff's Rule 4:46-2 statement, see R. 4:46-2(b),

payments" to plaintiff throughout the course of the parties' relationship, defendant was not current on its payment of plaintiff's invoices "[i]n and around September 2018."[5]  At that time, "[defendant] proposed converting the full amount of the then[-]outstanding balance to a promissory note," but "the parties could not agree on terms."[6]

---

defendant does not dispute plaintiff's assertions of material fact concerning the contents of plaintiff's detailed invoices, and plaintiff's assertions are properly supported by citation to the certification of Beverly Lubit, a partner at plaintiff's firm and "the originating, billing, and handling attorney responsible for [p]laintiff's day-to-day representation of [defendant]."  Because Lubit's certification is based on her personal knowledge and otherwise complies with the requirements of Rule 1:6-6 and Rule 1:4-4, we deem plaintiff's undisputed statement of material fact concerning the contents of its invoices admitted for purposes of plaintiff's summary judgment motion.  See R. 4:46-2(a) to (b).

[5] The record on appeal does not permit a determination of the amount defendant paid plaintiff throughout the parties' relationship.

[6] Defendant asserts in its response to plaintiff's statement of material facts, see R. 4:46-2(b), that plaintiff's "reference" to defendant's "offer" of a promissory note "is inappropriate pursuant to N.J.R.E. 408" because "[t]he offer was made in connection with negotiations to seek to persuade [plaintiff] not to file a [Uniform Commercial Code]-1 [financing statement (UCC-1)] lien against [defendant]'s intellectual property."  See Black's Law Dictionary 1754 (10th ed. 2014) (defining a "UCC-1" as a "required filing under the Uniform Commercial Code used to provide notice that a creditor has a security interest in a debtor's personal property"); see also Pinkerton's Inc. v. John A. Roebling Steel Corp., 186 N.J. Super. 10, 13 (Law Div. 1982) (explaining "[t]he primary purpose of a [UCC-1] is to put a searcher on notice that an underlying security agreement may be outstanding").  N.J.R.E. 408 provides that "[w]hen a claim is disputed as to validity or amount, evidence of statements or conduct by parties . . . in

7                                                                A-3775-19

On December 7, 2018, "[defendant] notified [p]laintiff" via email and letter "of its decision to terminate [the parties'] relationship . . . and to transfer legal representation to [defendant's] counsel at Cooley LLP." In the letter, defendant's "[f]ounder, [c]hairman, and [c]hief [e]xecutive [o]fficer, [Dr.]

---

settlement negotiations, . . . including offers of compromise or any payment in settlement of a related claim, <u>is not admissible either to prove or disprove the liability for, or invalidity of, or amount of the disputed claim</u>." (Emphasis added). However, the Rule provides that "[s]uch evidence shall not be excluded when offered for another purpose; and evidence otherwise admissible shall not be excluded merely because it was disclosed during settlement negotiations." <u>Ibid.</u>; <u>see also</u> N.J.R.E. 402 (providing that "[a]ll relevant evidence is admissible, except as otherwise provided in these rules or by law"); N.J.R.E. 401 ("'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action.").

Although the trial court did not address the admissibility of this evidence, it did not rely on the evidence "to prove or disprove the liability for, . . . []validity of, or amount of" plaintiff's claim. N.J.R.E. 408. The court granted summary judgment because it found the "fees [reflected in plaintiff's invoices were] necessary and reasonable." The court referenced this evidence as establishing "there were . . . attempts . . . to negotiate a resolution to . . . the issue of [nonpayment]" prior to defendant's termination of the parties' relationship, and thus the issue concerning the fees did not first "come up on December 7th, [2018]." Those facts are "of consequence to the determination of the action," N.J.R.E. 401; <u>see also</u> N.J.R.E. 402, and N.J.R.E. 408 therefore did not bar the trial court's consideration of the evidence for that limited purpose. We also do not rely on this evidence "to prove or disprove the liability for, . . . []validity of, or amount of" plaintiff's claim, N.J.R.E. 408, but rather we reference the evidence because it establishes plaintiff's invoices reflected an outstanding balance and defendant had knowledge of plaintiff's intention to file the UCC-1 in as early as September 2018.

8

Cynthia Lander[,] . . . stated: 'We truly valued all your support over the years and are committed to seeing that [plaintiff] is paid in full for past services and costs.'"

On December 17, 2018, following defendant's continued nonpayment, plaintiff "filed a UCC-1 in the State of Delaware encumbering certain intellectual property owned by [defendant]." On January 18 and 25, 2019, Dr. Lander again emailed plaintiff "acknowledg[ing] . . . [defendant's] 'goal of payment of monies owed to [plaintiff]'" and assuring plaintiff that defendant "intend[ed] to pay [plaintiff's] outstanding invoices."[7] In her January 18 email, Dr. Lander also acknowledged plaintiff's filing of the UCC-1, "propos[ing] that [plaintiff] release the liens on the patents" and "not take action to reinstate [them]."

---

[7] Defendant asserts in its counterstatement of material facts, see R. 4:46-2(b), supported by a certification of Dr. Lander, that it terminated plaintiff's representation "as a result of the fee issue." However, neither Dr. Lander nor defendant elaborate further on the reason for the termination. We note Dr. Lander also acknowledged in her certification that, at the time of the termination, she "thanked [plaintiff] for representing [defendant]" and "expressed that [defendant] wanted to pay [plaintiff]," and she stated it was not until after the termination that she "realized . . . [plaintiff] appear[ed] to have significantly overcharged [defendant] and that a good deal of [the] filings . . . [plaintiff] advised [defendant] to make were unnecessary."

On January 28, 2019, plaintiff served defendant with a pre-action notice, pursuant to Rule 1:20A-6, advising defendant of its opportunity to seek fee arbitration. Defendant "did not seek fee arbitration at that time," and did not thereafter pay the outstanding balance reflected in plaintiff's invoices. Plaintiff then filed a complaint seeking an order requiring defendant to pay the outstanding balance reflected in its invoices—"$837,524.19 ($493,776.72 in legal fees [plus] $343,747.47 in expenses)"—as well as the "statutory interest and the fees and costs incurred in bringing [the] action." In its complaint, plaintiff sought $860,593.28 in damages.

The discovery end date in this matter was January 20, 2020.[8] Eleven days after the discovery end date, defendant served a notice to take the deposition of Joseph Lubertazzi, Jr., an attorney with plaintiff's firm, in connection with purported damages defendant claims it suffered as a result of plaintiff's UCC-1 filing. Plaintiff moved for a protective order to quash the deposition notice. One week later, defendant filed a motion to amend its pleadings to assert a counterclaim and third-party complaint against plaintiff for the purported

---

[8] We discern from the parties' briefs on appeal and the June 5, 2020 hearing transcript that January 20, 2020 was the "extended" discovery end date. The record presented on appeal does not permit an identification of the initial discovery end date set by the trial court.

damages stemming from the UCC-1 filing. Plaintiff then moved for summary judgment on the claims asserted in its complaint.

In support of its summary judgment motion, plaintiff submitted certifications from Lubit and Daniel P. D'Alessandro, another attorney with plaintiff's firm.[9] Lubit certified "[t]he legal services rendered and, in turn, the fees and expenses incurred by [p]laintiff on behalf of [defendant] were reasonable and necessary." Plaintiff included Lubit's assertion as a material fact in its Rule 4:46-2 statement and properly cited to the "specif[ic] . . . paragraph[]" of the certification it "relied on" in support of the asserted fact. R. 4:46-2(a).

In opposition to plaintiff's motion, defendant relied on certifications from Dr. Lander and Frank Grassler, a Texas patent attorney and one of defendant's investors. Dr. Lander asserted that "Cooley [LLP] is a well-known and well-regarded intellectual property practice" which "has been handling the very same tasks that had been handled by [plaintiff]" "for less than half of the cost" of what plaintiff charged, and "Cooley [LLP] has even performed some additional services in connection with the fee dispute with [plaintiff]." Defendant relied

---

[9] We do not discuss the D'Alessandro certification because it is not pertinent to our resolution of the issues presented on appeal.

on this portion of Dr. Lander's certification as an assertion of fact in its counterstatement of material facts.[10]   See R. 4:46-2(b).   This assertion

---

[10]   Although it included this assertion in its Rule 4:46-2 statement, defendant generally and improperly cites to the entirety of Dr. Lander's certification rather than to the "specif[ic] . . . paragraph[]" of the certification defendant "relied on." R. 4:46-2(a) to (b).  It is not the role of the motion court or this court to sift through each paragraph of a certification to discern purported evidence supporting a party's statement of material facts in support of, or in opposition to, a summary judgment motion. Rule 4:46-2 prescribes the method for properly presenting material facts to the motion court in support of, and in opposition to, summary judgment.  We note that Dr. Lander's certification includes the following additional conclusory assertions pertaining to plaintiff's fees: (1) following defendant's termination of the parties' relationship, and "especially after [defendant] ha[d] been represented by Cooley . . . LLP," Dr. Lander "realized . . . [plaintiff] appear[ed] to have significantly overcharged [defendant] and that a good deal of [the] filings that [plaintiff] . . . advised [defendant] to make were unnecessary or—at best—provided only incremental value that was simply not necessary"; and (2) defendant "learned that all of [plaintiff's] recommended filings were unnecessary, providing only incremental value over/above the licensed composition of matter cases."  Those purported factual assertions, however, are not presented in defendant's Rule 4:46-2 statement and are therefore not properly before this court in our consideration of the summary judgment order on appeal. See Kenney, 308 N.J. Super. at 573. In any event, Dr. Lander's two statements constitute nothing more than conclusory assertions of opinion that are untethered to any averments of fact and, as such, they do not offer any basis to support a finding plaintiff's fees were unreasonable or that plaintiff provided services that were unnecessary. See Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009) (explaining that "'conclusory and self-serving assertions' in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment" (quoting Puder v. Buechel, 183 N.J. 428, 440 (2005))). Thus, even if the assertions had been properly included in defendant's Rule 4:46-2 statement, they would not have established an undisputed fact or have

constitutes the only alleged material fact in defendant's <u>Rule</u> 4:46-2 statement that is related to plaintiff's fees or the work plaintiff performed for defendant. The remainder of defendant's <u>Rule</u> 4:46-2 statement pertains only to plaintiff's filing of the UCC-1 and defendant's alleged resulting damages.[11]

As noted, defendant also relied on Grassler's certification in opposition to the summary judgment motion. In his certification, Grassler states that he has "an extensive background in science and with patents in the biotech field," and he discusses this background in detail. With his certification, Grassler submitted

---

constituted competent evidence creating a dispute of material fact pertinent to plaintiff's summary judgment motion. <u>See</u> <u>ibid.</u>; <u>Puder</u>, 183 N.J. at 440-41.

[11] For reasons we explain, defendant's asserted facts in its <u>Rule</u> 4:46-2 counterstatement concerning plaintiff's UCC-1 filing and the alleged damages defendant suffered as a result of the filing were not material to the court's determination of plaintiff's summary judgment motion and are not material to our review of the summary judgment order on appeal. Further, in support of each of these alleged facts, defendant again generally and improperly cites to Dr. Lander's certification in its entirety. <u>See</u> <u>R.</u> 4:46-2(a) to (b). However, to give context to defendant's arguments before the trial court and on appeal, we note defendant reported in its <u>Rule</u> 4:46-2 statement that its "sole assets are intellectual property"; "[i]n order to keep that intellectual property, [defendant] has to pay certain fees . . . and make certain filings throughout the world"; defendant's "only source of capital [is] . . . investments"; and "[a]fter [plaintiff] filed [the] UCC-1[,] . . . the investors upon which [defendant] relies for capital were no longer willing to invest any more capital because of the liens." Defendant asserts it therefore "ran out of investment capital" following plaintiff's UCC-1 filing; it "could not raise any additional capital"; and it "thus lost patents" "worth millions[,] . . . and perhaps tens of millions[,] of dollars."

A-3775-19

a curriculum vitae detailing his experience. Based on his specialized knowledge of patent law, his "review[ of defendant's] patent estate," and his "understanding of [defendant]'s product development operations," Grassler asserted various purported facts related to defendant's intellectual property needs and the legal services plaintiff provided, and he offered several opinions concerning the adequacy of plaintiff's representation and the necessity of the work plaintiff performed. "In short," Grassler opined plaintiff "did a great deal of work, which was simply not necessary." Grassler's certification was not accompanied by any exhibits, and, as noted, defendant did not assert any information reported in Grassler's certification as fact in its Rule 4:46-2 statement to the motion court. See R. 4:46-2(b).

The court heard argument on June 5, 2020. That day, the court entered orders: (1) granting plaintiff's motion for summary judgment and quashing defendant's notice of deposition to Lubertazzi, Jr.; and (2) denying defendant's motion to amend its pleadings.

The court found Dr. Lander's certification did not support defendant's opposition to plaintiff's summary judgment motion because the certification was "conclusory" and unsupported by the evidentiary record. The court further

determined Grassler's certification was "inadmissible" because it constituted an "untimely" expert opinion, as well as an inadmissible net opinion.

In support of its finding Grassler's expert testimony was "untimely," the court noted defendant had not disclosed Grassler as an expert in its response to plaintiff's interrogatories prior to the conclusion of discovery. See R. 4:10-2(d)(1) (providing "[a] party may through interrogatories require any other party to disclose the names and addresses of each person whom the other party expects to call at trial as an expert witness"); R. 4:17-4(a) (requiring that when a party receives interrogatory requests pursuant to Rule 4:10-2(d)(1), the party must provide that information and/or documentation in its response). The court also relied on Rule 4:17-7, which states:

> [I]f a party who has furnished answers to interrogatories thereafter obtains information that renders such answers incomplete or inaccurate, amended answers shall be served not later than [twenty] days prior to the end of the discovery period, as fixed by the track assignment or subsequent order. Amendments may be allowed thereafter only if the party seeking to amend certifies therein that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date. In the absence of said certification, the late amendment shall be disregarded by the court and adverse parties.

Because the court found defendant did not provide any "reason why" it failed to disclose Grassler as an expert in its interrogatory responses prior to the conclusion of discovery, nor did defendant move to amend its responses at any time following discovery, the court determined that Grassler's expert opinion—first offered in opposition to plaintiff's summary judgment motion—was "untimely" and inadmissible.

In support of its determination Grassler's certification constituted an inadmissible net opinion, the court found:

> [Grassler's opinions are un]substantiated [and] based on speculation, [and they] represent his personal views from his career. He doesn't address one specific time entry [in] the years of representations that he would claim to be knowledgeable in that was inappropriate. He doesn't really . . . refer to specific documents. . . . It's conclusory, speculative, unsubstantiated, inadmissible.

The court determined that because the parties entered into a valid agreement; plaintiff regularly provided defendant with "invoices contain[ing] detailed entries about the work [plaintiff] performed and fees and expenses incurred, the attorneys involved, the amount of time spent[,] . . . the date such tasks were performed, and the monies due and owing"; plaintiff's Rule 4:46-2 statement—which the court found was "supported" by Lubit's certification—established the fees and expenses for which plaintiff charged defendant

16

complied with R.P.C. 1.5 and satisfied "a prima facie [test] . . . [of] fairness and reasonableness"; and defendant did not provide competent evidence rebutting plaintiff's prima facie showing, "plaintiff . . . sustained [its] burden of establishing that there is no [genuine issue of] material fact as to [plaintiff's] right to a judgment in the amount that it's entitled." See R.P.C. 1.5(a) (requiring that "[a] lawyer's fee shall be reasonable," and providing "[t]he factors to be considered in determining the reasonableness of a fee").

The court also denied defendant's motion to amend its pleadings to add a counterclaim and third-party complaint, finding that although "there may be merit to [defendant's claims]," "[t]he dispute [between the parties] arose [prior to December 2018,] long before the lawsuit was filed"; defendant filed its motion to amend "too late in the action[,] after [the] action effectively was decided"; and "[t]he [c]ourt [was] not going to entertain [the motion to amend]" and "delay [resolution of the litigation] indefinitely" "at [that] stage." However, the court determined "defendant [could] file a separate action against [plaintiff] to collect for [the] cause of action that [was] proposed in the counterclaim and third-party complaint."

Defendant appeals from the court's June 5, 2020 orders granting plaintiff summary judgment and denying its motion for leave to amend its pleadings to add a counterclaim.[12]

## II.

We first address defendant's appeal from the order granting plaintiff summary judgment on its claim for the outstanding balance reflected in its invoices to defendant, as well as statutory interest and the costs incurred by plaintiff in prosecuting the action.

"[A] lawyer's bill for services must be reasonable both as to the hourly rate and as to the services performed." Gruhin & Gruhin, P.A. v. Brown, 338 N.J. Super. 276, 280 (App. Div. 2001). "That is not only the lawyer's legal obligation but his [or her] ethical one as well." Ibid. (citing R.P.C. 1.5). "As between attorney and client, their agreement ordinarily controls unless it is overreaching or is violative of basic principles of fair dealing or the services performed were not reasonable or necessary." Giarusso v. Giarusso, 455 N.J.

---

[12] Defendant presents no arguments on appeal concerning the court's grant of plaintiff's motion for a protective order quashing defendant's notice of deposition to Lubertazzi, Jr. We do not address the issue because any claims based on it are waived. See Sklodowsky, 417 N.J. Super. at 657; Jefferson Loan Co., 397 N.J. Super. at 525 n.4.

Super. 42, 52 (App. Div. 2018) (quoting Gruhin, 338 N.J. Super. at 281). As we explained in Giarusso:

> [A]lthough the court has the power and authority to review the fairness of the agreement and the reasonableness of the fee charged, it should ordinarily defer to the parties' agreement and the fee charged thereunder if it appears . . . that they meet a prima facie test of fairness and reasonableness, the client utterly fails to come forward with anything of substance to rebut that prima facie showing, and no expert is produced to challenge the bill rendered as unreasonable.
>
> [Ibid. (quoting Gruhin, 338 N.J. Super. at 281).]

Where an attorney seeks to collect fees from a client pursuant to an agreement between the parties, the attorney may satisfy this "prima facie test of fairness and reasonableness," ibid. (quoting Gruhin, 338 N.J. Super. at 281), by submitting a certification conforming to the requirements of Rule 1:6-6 and Rule 1:4-4 stating that the fees charged were reasonable and necessary to advance the attorney's representation of the client, see, e.g., Gruhin, 338 N.J. Super. at 280 (finding "[s]ummary judgment . . . perfectly appropriate" where an attorney certified "the services [he] performed [pursuant to an agreement] were both reasonable and necessary in representing [the] defendant," and the defendant provided no competent evidence "to the contrary").

19

Here, it is undisputed plaintiff seeks to collect fees from defendant pursuant to the parties' agreement, and defendant concedes plaintiff's "submission of . . . Lubit['s c]ertification" stating plaintiff's fees were reasonable and necessary "was enough to make a prima facie case." See ibid. However, defendant argues the court erred by granting plaintiff summary judgment because "the [c]ertifications of [Dr.] Lander and . . . Grassler" constituted competent evidence establishing "that [plaintiff] charged too much in fees for the work that it performed" and "that [plaintiff] filed many more patent applications and filings than necessary to protect the intellectual property interests of [defendant]." Thus, defendant argues the certifications raised a "[genuine] issue[] of material fact as to whether the services performed by [plaintiff] were necessary, and/or whether its fees were reasonable," and thereby rebutted plaintiff's prima facie showing. See R. 4:46-2(c); see also Giarusso, 455 N.J. Super. at 52; Gruhin, 338 N.J. Super. at 281.

"When . . . a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). Our review of a trial court's disposition on a summary judgment motion

"proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.

We therefore turn first to defendant's contention the trial court erred by determining Grassler's certification was inadmissible. "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Estate of Hanges, 202 N.J. at 383-84. Therefore, we review a trial court's "[e]videntiary decisions . . . under [an] abuse of discretion standard." Id. at 383. An abuse of discretion arises when the court's "decision [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." United States ex rel. U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 504 (2008) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Applying this standard, we discern no basis to disturb the trial court's decision to exclude Grassler's certification.

Defendant relied on Grassler's certification to provide an expert opinion on the necessity of plaintiff's services and the reasonableness of plaintiff's fees.[13]

_____

[13] If Grassler's certification was not intended to provide an expert opinion, it would not otherwise have constituted competent evidence because his assertions are not based on personal knowledge; he states the certification is based upon his "review[ of defendant]'s patent estate" following plaintiff's work, and his "understanding of [defendant]'s product development operations." See State v. Hyman, 451 N.J. Super. 429, 442 (App. Div. 2017) (stating "[e]xcept as

Eight of the fourteen paragraphs in the certification purport to establish Grassler's "extensive background in science" and intellectual property law, "and [specifically] with patents in the biotech field."  The remainder of Grassler's certification sets forth his opinions—based on his claimed "extensive" specialized knowledge—concerning the adequacy of plaintiff's representation of defendant and the necessity of the work plaintiff performed.  See Hyman, 451 N.J. Super. at 443 (explaining "expert [opinion] testimony depends on a witness's" "scientific, technical, or other specialized knowledge," acquired through "skill, experience, training, or education," "to address matters outside a juror's understanding" (quoting N.J.R.E. 702)).

Because Grassler's statements constituted an expert opinion, defendant was required to disclose Grassler as an expert either: (1) in its response to plaintiff's interrogatory requests on or before "[twenty] days prior to the end of the discovery period," R. 4:17-7; see also R. 4:10-2(d)(1); R. 4:17-4(a), or (2)

otherwise provided by [N.J.R.E.] 703 (bases of opinion testimony by experts), a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter" (quoting N.J.R.E. 602)); N.J.R.E. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the proceeding."); see also R. 1:6-6; R. 1:4-4.  Due to Grassler's lack of personal knowledge, he was only able to provide an opinion as an expert.  See Hyman, 451 N.J. Super. at 442; N.J.R.E. 602; see also N.J.R.E. 703; R. 1:6-6; R. 1:4-4.

less than "[twenty] days prior to" the conclusion of discovery, "only" upon a motion to amend its responses accompanied by a certification stating "the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date," R. 4:17-7. "In the absence of said certification, [a] late amendment shall be disregarded by the court and adverse parties." Ibid. Where a party fails to disclose an expert's report pursuant to Rule 4:17-4(a) but attempts to introduce the expert's testimony at trial, "[t]he court . . . may exclude the testimony." R. 4:23-5(b); see also DePalma v. Bldg. Inspection Underwriters, 350 N.J. Super. 195, 216 (App. Div. 2002) (upholding a court's exclusion of an expert's testimony where the offering party did "not name[] the [expert] or provide[] his report during the discovery period, and its belated attempt to call [the expert] to offer a legal opinion, and to introduce [new information,] . . . came as a surprise during the trial").

Defendant did not disclose Grassler as an expert in its responses to plaintiff's interrogatories prior to the conclusion of discovery, nor did defendant move to amend its responses to identify Grassler as an expert or supply an expert report from him. Instead, defendant simply submitted Grassler's certification in opposition to plaintiff's summary judgment motion well after the conclusion of

23                                                                                          A-3775-19

discovery and unaccompanied by a certification setting forth the reason defendant failed to identify Grassler as an expert in its answers to plaintiff's interrogatories. For this reason alone, we find the trial court did not abuse its discretion by excluding Grassler's certification, see R. 4:23-5(b); see also R. 4:17-7; DePalma, 350 N.J. Super. at 216, and we are convinced the court correctly concluded Grassler's certification did not create any disputed issues of material fact precluding an award of summary judgment to plaintiff.

We also find the court correctly determined that, even if defendant had timely disclosed Grassler as an expert, Grassler's statements did not raise any disputed issues of material fact because they constituted an inadmissible net opinion. "The net opinion rule 'requir[es] that . . . expert[s] "give the why and wherefore" that supports the[ir] opinion, "rather than a mere conclusion."'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (first alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)); see also Townsend, 221 N.J. at 55 ("[A] trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record."). "For example, 'a trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified.'" Davis,

219 N.J. at 410 (quoting <u>Pomerantz Paper Corp.</u>, 207 N.J. at 373). "Therefore, an expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is "personal."'" <u>Ibid.</u> (quoting <u>Pomerantz Paper Corp.</u>, 207 N.J. at 373).

Grassler's certification presents the paradigm of a net opinion. The certification sets forth numerous opinions in conclusory and anecdotal fashion concerning the reasonableness and necessity of the work plaintiff performed in connection with its representation of defendant, but Grassler's opinions are untethered to any "objective" professional standard by which he reached his conclusions. <u>Ibid.</u> (quoting <u>Pomerantz Paper Corp.</u>, 207 N.J. at 373). Indeed, Grassler opines the services plaintiff provided in applying for multiple patents were unnecessary or added little value when measured against the legal fees and costs associated with the applications, but he acknowledges "[t]here is no bright line standard or test of relative values of succeeding . . . applications." In other words, Grassler's opinions are impermissibly based solely on his personal view of the reasonableness and necessity of plaintiff's services and fees. <u>See</u> <u>ibid.</u>; <u>Pomerantz Paper Corp.</u>, 207 N.J. at 373.

We are also not persuaded by defendant's claim that Grassler's certification was not provided as an expert opinion, and that it rather constituted

a "good-faith" "proffer to explain the factual basis to support an area of inquiry that [defendant] could have (and would have) explored in cross-examination of [plaintiff]'s witnesses." The argument ignores that Grassler's certification could only have been accepted as an expert opinion because his statements are not based on his personal knowledge. See Hyman, 451 N.J. Super. at 442; N.J.R.E. 602; see also N.J.R.E. 703.

Moreover, a party opposing summary judgment is required to offer more than mere "proffer[s]" of information that may support future "inquiry"; the opposing party must point to competent record evidence establishing a genuine issue of material fact at the time of its opposition. See R. 4:46-2(c) (providing that summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law" (emphasis added)). Contrary to defendant's contention, a party opposing summary judgment does not raise a genuine issue of material fact based on evidence the party anticipates uncovering at a later date. See ibid.; see also Housel, 314 N.J. Super. at 604 (explaining "[t]he nonmovant has the 'burden of producing . . . evidence that would support a jury verdict[,]' and must 'set forth

specific facts showing that there is a genuine issue for trial'" (third alteration in original) (emphases added) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986))); Hoffman, 404 N.J. Super. at 426 (finding "[c]ompetent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments'" (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005))). Thus, even accepting defendant's argument concerning the purpose for which it submitted Grassler's certification, the certification did not raise a genuine issue of material fact precluding summary judgment for plaintiff. See R. 4:46-2(c); see also Anderson, 477 U.S. at 256; Hoffman, 404 N.J. Super. at 426; Housel, 314 N.J. Super. at 604.

We also find the trial court correctly determined Dr. Lander's certification did not raise a genuine issue of material fact concerning the reasonableness or fairness of plaintiff's fees. The only assertion in Dr. Lander's certification that addresses plaintiff's fees, or the work plaintiff performed, and was presented to the trial court in defendant's Rule 4:46-2 papers is Dr. Lander's claim Cooley LLP charged defendant less than plaintiff to handle the same patent-related matters, and that Cooley LLP also provided "some additional services in connection with the fee dispute with [plaintiff]."

Initially, the fact that a different law firm charged less than plaintiff for similar work does not, in and of itself, raise a genuine issue of material fact as to whether plaintiff's fees are unreasonable or unfair. See, e.g., Gruhin, 338 N.J. Super. at 279-80 (finding the defendant's assertion in a matrimonial matter "that [the] plaintiff [law firm] had charged him more than his former wife's attorneys had charged her" did not raise a genuine issue of material fact concerning the fairness or reasonableness of the plaintiff's fees).

Moreover, Dr. Lander's conclusory assertion and opinion concerning the fees Cooley LLP charged defendant for performing "the very same tasks" as plaintiff are wholly unsupported by record evidence. Dr. Lander's bald, self-serving, conclusory allegation does not constitute competent evidence supporting a valid opposition to plaintiff's summary judgment motion.[14] See

---

[14] As noted, the only other claim in Dr. Lander's certification addressing the fairness or reasonableness of plaintiff's fees—which was not presented to the motion court in defendant's Rule 4:46-2 statement—is Dr. Lander's assertion that she, and defendant, "realized," following defendant's termination of plaintiff's representation, "that [plaintiff] appear[ed] to have significantly overcharged [defendant] and that a good deal of [the] filings that [defendant was] advised to make were unnecessary." Even if defendant had included the assertion in its Rule 4:46-2 statement—and it did not—the assertion is likewise conclusory and self-serving, and it therefore cannot serve to "defeat a meritorious motion for summary judgment." Hoffman, 404 N.J. Super. at 425-26; see also Puder, 183 N.J. at 440-41.

Hoffman, 404 N.J. Super. at 425-26; Puder, 183 N.J. at 440-41. The trial court therefore correctly determined Dr. Lander's certification did not raise a genuine issue of material fact precluding summary judgment to plaintiff. See Hoffman, 404 N.J. Super. at 425-26; Puder, 183 N.J. at 440-41; see also R. 4:46-2(c).

In sum, we find that because Lubit's certification established a prima facie showing the fees plaintiff charged defendant were fair and reasonable, see Gruhin, 338 N.J. Super. at 280-81; Grassler's and Dr. Lander's certifications did not constitute competent evidence "rebut[ting] that prima facie showing," Giarusso, 455 N.J. Super. at 52 (quoting Gruhin, 338 N.J. Super. at 281); and defendant points to no other competent evidence it claims establishes plaintiff's fees are unreasonable or unfair, we discern no basis to conclude the court erred by granting plaintiff summary judgment, and we affirm the court's summary judgment order.[15]

_____

[15] Defendant argues in its brief on appeal that "[e]ven if [it] did not file a counterclaim, or if the [c]ourt denied the motion for leave, [plaintiff]'s outrageous and illegal conduct" in filing the UCC-1 "provided [defendant] a set-off against [plaintiff]'s claim," which "[in] itself should have been enough to deny [plaintiff]'s motion [for summary judgment]." This argument lacks merit. Defendant's answer to the complaint did not assert a defense of set-off based on plaintiff's filing of the UCC-1. Defendant's answer included an affirmative defense of set-off, but it was expressly limited to a set-off based on plaintiff's receipt of collateral payments pursuant to N.J.S.A. 2A:15-97. Therefore, we reject defendant's argument the existence of a purported "set-off" precluded the

III.

We next address defendant's argument the trial court erred by denying its motion to amend its pleadings—following the conclusion of discovery—to assert a counterclaim against plaintiff for damages stemming from plaintiff's UCC-1 filing.

Rule 4:9-1 provides:

> A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within [ninety] days after it is served.

The Rule "requires that, unless amendment is sought while still a matter of right, the amendment of pleadings is allowed only 'by leave of court which shall be freely given in the interest of justice.'" Notte v. Merchs. Mut. Ins., 185 N.J. 490, 500-01 (2006) (quoting R. 4:9-1).

Although our Supreme Court has "made clear that 'Rule 4:9-1 requires that motions for leave to amend be granted liberally,'" id. at 501 (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456 (1998)), "the granting

---

court's proper grant of summary judgment to plaintiff where defendant did not otherwise present competent evidence raising a genuine issue of material fact precluding judgment in plaintiff's favor on its affirmative claim as a matter of law. See R. 4:46-2(c).

of a motion to file an amended [pleading] always rests in the court's sound discretion," ibid. (quoting Kernan, 154 N.J. at 457); see also Franklin Med. Assocs. v. Newark Pub. Schs., 362 N.J. Super. 494, 506 (App. Div. 2003) ("[T]here remains 'a necessary area of judicial discretion in denying . . . motions [for leave to amend a pleading] where the interests of justice require.'" (quoting Young v. Schering Corp., 275 N.J. Super. 221, 232 (App. Div. 1994))). We thus "review a trial court's decision to grant or deny a motion to amend [a pleading] for [an] abuse of [this] discretion." Port Liberte II Condo. Ass'n v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014).

Defendant argues the court abused its discretion by denying its motion for leave to amend its June 2019 answer to include a counterclaim for purported damages based on plaintiff's alleged improper filing of the UCC-1. Defendant did not file its motion to amend until one month after the January 20, 2020 discovery end date, and defendant contends its motion was filed at that time because it only determined plaintiff "did not have a security interest in [defendant]'s intellectual property" after Lubit "admitted" so at her January 30, 2020 deposition.[16] Defendant claims that "[u]ntil [Lubit's] admission, it was not

---

[16] The parties agreed to take Lubit's deposition following the January 20, 2020 discovery end date.

clear that [plaintiff] did not have any right to lien [defendant]'s intellectual property." We reject defendant's contentions, and affirm the court's order denying defendant's motion for leave to amend its pleadings to add a counterclaim. We do so for two reasons.

First, although Rule 2:6-1(a)(1)(A) and (I) respectively require that the record on appeal in a civil action include "the pleadings" and all "parts of the record . . . essential to the proper consideration of the issues," defendant fails to include in the record on appeal the proposed counterclaim and the papers submitted to the court in support of, and in opposition to, its motion to amend. A decision whether to grant leave to file an amended pleading must be made "in light of the factual situation existing at the time [the] motion is made." Notte, 185 N.J. at 501 (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256 (App. Div. 1997)). Defendant's failure to provide the motion record and the proposed counterclaim renders it impossible to determine the factual circumstances presented to the court in support of, and in opposition to, the motion, and, concomitantly, does not permit a reasoned determination whether the court abused its discretion by denying the motion based on the record presented. See Soc'y Hill Condo. Ass'n, 347 N.J. Super. at 177-78 (explaining appellate review of the merits of an issue was rendered "impossible" without the

"parts of the record . . . essential to the proper consideration of the issues" (quoting R. 2:6-1(a)(1)(I))). Lacking the motion record necessary to conduct an appropriate review of the court's decision, we are constrained to affirm the order denying defendant's motion to amend to add the counterclaim for that reason alone. Ibid.

Secondly, the summary judgment record that is included in the record on appeal wholly undermines defendant's argument the court abused its discretion by denying defendant's motion, at least in part, because it was untimely. In its determination of a motion for leave to amend a pleading, "[o]ne circumstance" a court "consider[s] is the reason for the late filing." Bldg. Materials Corp. of Am. v. Allstate Ins., 424 N.J. Super. 448, 484-85 (App. Div. 2012). The untimeliness of a motion to amend is particularly relevant where, as here, the movant does not provide a valid justification for its delay. See ibid.

Further, "[a]lthough it is a significant factor [if] the pleader will lose a cause of action under the entire controversy doctrine if the motion for leave to amend . . . is denied, it is 'not necessarily the dispositive consideration, particularly where the assertion is so late as to prejudice other parties.'" Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:9-1); see also id. at 468-69

33

(explaining the entire controversy doctrine dictates that "all parties involved in a litigation should . . . present in that proceeding all . . . claims and defenses that are related to the underlying controversy," or risk the claims or defenses being barred (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989))); see also R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . .").

Contrary to defendant's claim, it was aware plaintiff filed the UCC-1 months prior to the filing of plaintiff's complaint in March 2019, the filing of defendant's answer in June 2019, and Lubit's January 30, 2020 deposition. Defendant knew plaintiff intended to file the UCC-1, and defendant believed it would sustain damages from the filing, as early as September 2018. Indeed, in its response to plaintiff's statement of material facts submitted in connection with the summary judgment motion, defendant asserts that it was "negotiat[ing]" with plaintiff "to seek to persuade [plaintiff] not to file [the] UCC-1" in as early as September 2018 when defendant "offer[ed]" to execute a promissory note to resolve the fee dispute. And, in Dr. Lander's certification, she states that "[w]hen [plaintiff] threatened to file [the UCC-1], [she] told [plaintiff] that if it did so it would likely make it impossible for [defendant] to raise capital and thus

to continue in business (much less pay any money to [plaintiff]) because [defendant] would lose patents for lack of resources."

Plaintiff did not file the UCC-1 until December 2018, and defendant was aware of the filing on or prior to January 18, 2019. On that date, Dr. Lander emailed defendant requesting that the "liens" be "release[d]" and "not . . . reinstate[d]." Thus, prior to the filing of plaintiff's complaint in March 2019, defendant was fully aware plaintiff had filed the UCC-1.

Additionally, whether plaintiff held a proper security interest in defendant's intellectual property presented an issue of law, which defendant had the ability to address at any time after it learned plaintiff filed the UCC-1. Defendant does not offer any facts supporting its alleged uncertainty about whether plaintiff held a security interest in its intellectual property; explaining why its determination that plaintiff lacked the legal authority to obtain the security interest was dependent on Lubit's January 30, 2020 deposition testimony; demonstrating Lubit had any information concerning a security interest that defendant did not have previously; or providing any reason it was unable to learn whether plaintiff held a security interest in its intellectual property during the more than one-year period between plaintiff's filing of the UCC-1 and defendant's filing of its motion to amend. Defendant likewise does

not cite to any evidence establishing it first learned plaintiff did not have a right to place a lien on its intellectual property during Lubit's deposition. Instead, defendant relies on a bald assertion in its brief on appeal that it did not know plaintiff did not have a right to a security interest in its intellectual property until after Lubit's deposition. See State v. Culley, 250 N.J. Super. 558, 561 (App. Div. 1991) ("[A] statement in [a] brief is not evidence . . . .").

The record further reveals defense counsel stated at oral argument that defendant informed him prior to Lubit's deposition that plaintiff did not hold a valid security interest in its intellectual property, but defense counsel "always assumed [defendant] was just wrong" because "[i]t was inconceivable to [him] that [plaintiff] would file a document . . . representing that they have a security interest when, in fact, they don't." Defense counsel asserted that, for this reason, he "gave [plaintiff] the benefit of the doubt" "for a lot of years." We do not find this to be a reasoned justification for defendant's apparent failure to determine the propriety of plaintiff's UCC-1 filing until after Lubit's January 30, 2020 deposition, or its delay in either asserting a defense of set-off or filing the motion for leave to file the counterclaim until after the conclusion of discovery. Of course, defense counsel's concession that defendant informed him it did not believe plaintiff held a security interest in its intellectual property "years" prior

to defendant's filing of the motion to amend undermines the bona fides of the only justification defendant offers for the late filing of its motion for leave to file a counterclaim—that Lubit's deposition testimony first provided facts supporting its counterclaim.[17]

Put simply, defendant's assertion the court abused its discretion by denying the motion to amend in part because it was untimely is contradicted by the evidence. Defendant provides no justification supported by the record provided on appeal for its late filing, and we find nothing new in Lubit's deposition testimony, as described by defendant, supporting the late filing. It

---

[17] We note defendant's assertion that the billing partner, Lubit, "admitted" at her deposition that plaintiff law firm "did not have a security interest in [defendant's] intellectual property" when it filed the UCC-1. As the trial court made clear, defendant retains the ability to file an independent action for damages flowing from that allegedly improper filing. We express no opinion on the important issue of the ethics of such a filing, whether it violated the plaintiff's professional obligations to its client, or its effect on the lawyer-client relationship between the parties. It appears our courts have not addressed the issue whether a New Jersey lawyer may file a charging lien against patents the lawyer helped obtain through patent applications, prosecution, or other proceedings. Other courts that have addressed the issue have reached differing results. Compare Ropes & Gray LLP v. Jalbert, 910 N.E.2d 330 (Mass. 2009), and Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc., 295 N.W.2d 514 (Minn. 1980) (Minnesota law) (approving charging liens), with In re Collins & Aikman Corp., 397 B.R. 820 (E.D. Mich. 2008) (applying New Hampshire law) (disapproving lien). But, the statutes that have been found to permit such charging liens arguably may be distinguished from the New Jersey statute, N.J.S.A. 2A:13-5.

was therefore proper for the motion court to rely on defendant's inexplicable delay in asserting its claim, and the untimeliness of defendant's application, in denying the motion to amend to add the counterclaim. See Bldg. Materials Corp., 424 N.J. Super. at 484-85. Defendant makes no other arguments, supported by the record on appeal, permitting a determination the court abused its discretion by denying defendant's motion to amend.

To the extent we have not expressly addressed any of defendant's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3775-19